Opinion issued August 14, 2009 


In The 

Court of Appeals


For The 



First District of Texas


NO. 01-06-00424-CV 

RHONDA WILSON, INDIVIDUALLY AND AS REPRESENTATIVE OFALL WRONGFUL DEATH BENEFICIARIES AND AS HEIR AND LEGALREPRESENTATIVE OF THE ESTATE OF REAVEN WILSON; RICKWILSON, INDIVIDUALLY AND AS REPRESENTATIVE OF ALLWRONGFUL DEATH BENEFICIARIES OF THE ESTATE OF RAINIWILSON; PAMELA MANN, INDIVIDUALLY AND AS SURVIVINGPARENT OF JUSTIN STOOKSBERRY, AS REPRESENTATIVE OF ALLWRONGFUL DEATH BENEFICIARIES, AND AS THE LEGALREPRESENTATIVE OF THE ESTATE OF JUSTIN STOOKSBERRY; andTOMMY STEVENSON, INDIVIDUALLY AND AS LEGALREPRESENTATIVE OF THE ESTATE OF JENNIFER STEVENSON,DECEASED, AND AS REPRESENTATIVE OF ALL WRONGFUL DEATHBENEFICIARIES, Appellants

V. 

SAM D. DAVIS AND AMALGAMATED WESTERN CO., INC., Appellees 

On Appeal from the Probate Court No. 1Harris County, TexasTrial Court Cause No. 345,407-402


O P I N I O N 

Appellants, Rhonda Wilson, Rick Wilson, Pamela Mann, and Tommy Stevenson, each individually and in the representative capacities set out above, appeal from a take-nothing summary judgment rendered in favor of appellees, Amalgamated Western Co., Inc. (“AWC”) and Sam D. Davis. We determine (1) which aspects of the judgment appellants do not challenge; (2) whether AWC conclusively disproved respondeat superior liability; (3) whether, in response to AWC’s no-evidence summary-judgment motion, appellants raised some evidence to support their alter ego “reverse-piercing” liability theory; and (4) whether AWC or Sam Davis was entitled to summary judgment on claims or liability theories that were not expressly attacked in their summary-judgment motions. We affirm the judgment in part, reverse it in part, and remand the cause. 




Background 

Jeannie and SamDavis, husband and wife, were the sole shareholders of AWC. AWC was a closely held, “Subchapter S” corporation that the Davises incorporated in February of 2000. AWC was in the business of steel processing and, after the events of this suit, of steel brokering. Sam Davis was AWC’s president and general manager, and Jeannie Davis was its secretary and treasurer. The Davises were also employees of AWC. 

In 2001, the Davises purchased a horse for Jeannie. On the night of January 27, 2002, Jeannie went to tend to the horse until about 10:30 or 10:45. Her whereabouts and actions after then were unaccountedfor until 1:00 the next morning, when, as she drove the wrong way on the freeway, she collided with the vehicle driven by the children of appellants, killing everyone in both vehicles. At the time of the collisions, Jeannie Davis was highly intoxicated, allegedly at four times the legal limit. 

It is undisputed that Sam and Jeannie Davis used funds from an AWC account both to purchase the horse and to pay for its upkeep. The Davises produced summary-judgment evidence showing that the monies used to purchase and to care for the horse were early drawn dividends to them. In response, appellants produced summary-judgment evidence showing that the same funds could not properly be accounted for as advanced dividends to the Davises and that there was thus a fact issue as to whether AWC or the Davises (or both) owned the horse. 

The parties disputed who owned the vehicle that Jeannie Davis was driving at the time of the accident. AWC produced the vehicle’s certificate of title and Sam Davis’s deposition testimony to show that the vehicle was owned either by Jeannie or by the Davises, but not by AWC. Appellants produced evidence that (1) the $5,000 down-payment for the vehicle’s purchase was made by a check drawn on an AWC account; (2) all six monthly payments for the six-month-old vehicle’s financing were made by checks drawn on an AWC account (and those payments could not be considered dividends to the Davises); and (3) AWC sometimes paid for gasoline and maintenance for the vehicle. 

All appellants except Stevenson (“the plaintiff appellants”) sued the temporary administrator of Jeannie Davis’s estate,[1] Sam Davis, and AWC in probate court on February 25, 2004. Appellant Stevenson later intervened. Throughout the course of the proceedings below, the plaintiff appellants amended their petition five times, and appellant Stevenson amended his petition in intervention three times. All appellants later added other defendants who are not parties to this appeal because the claims against them were severed from the judgment rendered on the claims against AWC and Sam Davis. 

By June 7, 2005, the “live” pleading of the plaintiff appellants was their fifth amended petition, and the live pleading of appellant Stevenson was his second amended petition in intervention. At that point, the live petitions of the plaintiff appellants and appellant Stevenson alleged the following causes of action and theories of liability against the administrator of Jeannie Davis’s estate, AWC, and 

The temporary administrator was later replaced by Sam Davis, as administrator. 

Sam Davis: 

! Causes of action: 


Jeannie Davis was negligent, grossly negligent, and negligent per se. 


AWC was negligent, grossly negligent, and negligent per se on the following bases: 


AWC was vicariously liable for the negligence of Jeannie Davis under various theories, discussed below............................... all appellants 

AWC was vicariously liable, presumably under theories of alterego or single business enterprise, for all of Sam Davis’s actions that underlay the direct-liability claims asserted against him. . ............................ appellant Stevenson 

AWC was directly liable for failing to exercise reasonable control over its employee or agent, Jeannie Davis, who was acting in the course and scope of her employment with AWC when she was tending to AWC’s horse................ all appellants 

AWC was directly liable for the negligent actions of its vice-principal, Jeannie Davis, when she consumed alcohol while operating the vehicle for AWC’s benefit and when she, as an officer, allowed 




2

herself, as an employee, to drive drunk. . . .all appellants 

We will refer to this direct-liability claim as do appellants: the “vice-principalliability” negligence claim. 

e. AWC was directly liable under the theory of “permissive use” because it allowed Jeannie Davis to operate the vehicle for personal affairs.[3] . .................................. all appellants 

3. Sam Davis was negligent, grossly negligent, and negligent per se on the following bases: 


a. 

Sam Davis was vicariously liable for the negligence of Jeannie Davis under various theories, discussed below............................... all appellants 


b. 

Sam Davis was vicariously liable under various theories (presumably alter ego and single business enterprise) for all direct-liability claims asserted against AWC................... appellant Stevenson 


c. 

Sam Davis committed “negligent entrustment” of the vehicle to Jeannie Davis.. . . . . . . . . . . . . . . all appellants 


d. 

Sam Davis was negligent for failure to prevent his spouse from having operated the spouses’ vehicle while intoxicated.. . . . . . . . . . . . . . . appellant Stevenson 



4. A declaratory judgment should be rendered that (1) the Davises and AWC were alter egos of each other, (2) AWC failed to adhere to corporate formalities, and (3) the legal control or ownership of the vehicle involved in the collision was held by either AWC or the Davises and AWC 

“Permissive use” generally arises as a construct for determining coverage under the “omnibus clause” of commercial automobile liability insurance, which generally insures the employer and others using its automobile with the employer’s permission. See generally, e.g., Old Am. County Mut. Fire Ins. Co. 

v. Renfrow, 130 S.W.3d 70 (Tex. 2004); Coronado v. Employers’ Nat’l Ins. Co., 596 S.W.2d 502 (Tex. 1979). We have found no authority recognizing a “permissive use” cause of action; however, AWC did not specially except on the basis that appellants had not stated a claim, and it did not move for summary judgment on that basis, either. 

as alter egos....................... the plaintiff appellants


Sam Davis and AWC were liable under the wrongful death and survival statutes.. ...................... all appellants 

A constructive trust should be imposed because Sam Davis had fraudulently wasted the assets of AWC since Jeannie Davis’s death........................ appellant Stevenson 


! Theories of vicarious liability for Jeannie Davis’s negligence: 


AWC and Sam Davis were each vicariously liable for Jeannie Davis’s conduct under the theory of alter ego, for which AWC’s corporate veil should be pierced. . ....................................... all appellants 

AWC and Sam Davis were each vicariously liable for Jeannie Davis’s conduct under the theory of single business enterprise... . . . . . . . . . . . . . . . . . appellant Stevenson 

AWC was vicariously liable for Jeannie Davis’s conduct under the theory of respondeat superior because Jeannie Davis was acting in the course and scope of her employment with AWC in driving from the stables where she had tended to what was allegedly AWC’s horse. . ....................................... all appellants 

AWC committed “negligent entrustment” of the vehicle to Jeannie Davis, rendering it vicariously liable for her actions................................... all appellants 

AWC was liable under the theory of joint enterprise because “defendants impliedly agreed the endeavor (i.e. the caring and the maintenance of [the horse]) was to be a responsibilityof [AWC] (which purchased [the horse]) and of the Davises (by the assertion that [the horse] was their personal property).”. . . . . . . . . . . . . . . . the plaintiff appellants 

AWC and Sam Davis (presumably as AWC’s alter ego or as part of a joint enterprise with Jeannie Davis and AWC) were liable under “agency principles by estoppel” (the plaintiff appellants) and “ostensible agency, apparent agency, or agency by estoppel” (appellant Stevenson). . ....................................... all appellants 


! “Defensive” allegation: Because AWC and Sam Davis committed “fraud before th[e] court,” they were “estopped by conduct, estopped by action, estopped by oath and/or have equitably, legally, and or quasi-judicially waived their right to claim dividend status for amounts not previously declared in their sworn assertions to governmental agencies.”. .................................... all appellants 

On December 28, 2004, Sam Davis filed a hybrid traditional and no-evidence summary-judgment motion attacking only appellants’ negligent-entrustment claim. See TEX. R. CIV. P. 166a(c), (i). On January 12, 2005, AWC filed its first amended summary-judgment motion, which was also a hybrid traditional and no-evidence motion. The claims, liability theories, and damages of all appellants that AWC attacked by this first amended summary-judgment motion were (1) negligent entrustment; (2) negligence, gross negligence, and negligence per se (though AWC interpreted the basis for these allegations as being solely negligent entrustment); (3) alter ego; (4) singlebusiness enterprise; (5)respondeatsuperior; (6)fraud as the basis for a constructive trust; and (7) exemplary damages. 

The trial court granted Sam Davis’s summary-judgment motion verbally in early June 2005; the record contains conflicting indications as to whether the trial court memorialized that verbal ruling by written order on or about June 7, 2005, but if it did, no such order appears in our record. Take-nothing summary judgment was rendered on all of the claims asserted by all appellants against AWC on June 7, 2005. 

On June 27, 2005, AWC moved to set aside the final summary judgment in its favor so that it could file an additional summary-judgment motion (again, hybrid traditional and no-evidence) to attack the plaintiff appellants’ joint-enterprise theory of liability, which it had neglected to attack in its first amended summary-judgment motion. That same day, AWC filed its “second no-evidence and traditional motion[] for summary judgment,” attacking the joint-enterprise theory of liability. On June 30, 2005, the trial court granted AWC’s motion to set aside the summary-judgment order in favor of AWC and ordered that appellants’ “pleadings . . . not be amended without good cause.” That same day, the trial court granted AWC’s first amended traditional and no-evidence summary-judgment motion, rendering a take-nothing judgment on all of appellant Stevenson’s claims and theories against AWC and on the plaintiff appellants’ claims and theories of “negligententrustment, negligence, negligence per se, gross negligence, respondeat superior, fraud, exemplary damages, single business enterprise and alter ego.” 

About an hour and a half after the June 27 summary-judgment order in favor of AWC was signed, the plaintiff appellants filed a supplement to their fifth amended petition,alleging “judicialestoppel,estoppel,waiver and laches” against Sam Davis. 

Likewise, on July 21, 2005, appellant Stevenson filed a third amended petition in intervention, asserting the same claims, liability theories, and defensive theories against both AWC and Sam Davis—despite the fact that take-nothing summary judgment had already been rendered on all of appellant Stevenson’s claims and liability theories against AWC and despite the possible granting of Sam Davis’s summary-judgment motion. The third amended petition in intervention merely added allegations as to why the statute of limitations did not bar appellant Stevenson’s claims, without adding additional claims or theories of liability. AWC moved to strike the third amended petition in intervention for having reasserted claims against it that had already been determined by the June 30, 2005 summary-judgment order in its favor; Sam Davis did not move to strike this pleading. 

The trial court did not grant AWC’s motion to strike, but on August 18, 2005, it granted AWC’s June 27 “second” summary-judgment motion and rendered a take-nothing judgment on all claims of all appellants against AWC. The trial court did not expressly dispose of the claims reasserted against Sam Davis in appellant Stevenson’s third amended petition in intervention. On September 19, 2005, the trial court signed an order (1) severing the summary judgment rendered in favor of AWC and (2) purporting to sever the summary-judgment order rendered in favor of Sam Davis (though nothing in the record indicates that the trial court had signed such a summary-judgment order yet) from the remaining claims and defendants; the trial court also abated the claims against the other defendants until further order. This severance order did not contain any language indicating that it purported to render a final judgment on the severed claims. On February 24, 2006, during the pendency of this appeal, the trial court signed a take-nothing summary-judgment order on all appellants’ claims against Sam Davis, rendering the severed judgment final. 



Standard of Review and Burden of Proof 

We review summary judgments de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 

Traditional summary judgment under Texas Rule of Civil Procedure 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Randall’s Food Mkts., Inc. 

v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); see TEX. R. CIV. P. 166a(c). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff’s causes of action or if it conclusively establishes all elements of an affirmative defense. Randall’s Food Mkts., Inc., 891 S.W.2d at 644. 

A party may move for no-evidence summary judgment under Texas Rule of Civil Procedure 166a(i) “if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.” Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.App.—Houston [1st Dist.] 1999, no pet.); see TEX.R.CIV.P.166a(i). “The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements.” Flameout Design & Fabrication, Inc., 994 S.W.2d at 834. 

In reviewing the granting of either type of summary-judgment motion, we indulge every reasonable inference from the evidence in favor of the non-movant, resolve any doubts arising from the evidence in its favor, and take as true all evidence favorable to it. Malcomson Rd. Util. Dist. v. Newsom, 171 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); Flameout Design, 994 S.W.2d at 834. When a summary judgment does not specify the grounds upon which the trial court ruled, we must affirm it if any of the summary judgment grounds on which judgment could be based is meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 



Summary Judgment for AWC 

In three issues, appellants challenge the summary judgment rendered for AWC.[4] 

We note at the outset that, although appellants and AWC each objected to at least some evidence presented by the other, no one obtained a ruling on any objections, and no one argues on appeal that the other party’s summary-judgment proof may not be considered for any reason raised as an objection below. 


A. Bases for Summary Judgment that Appellants Do Not Challenge 

First, at oral argument, appellants confirmed that they are not challenging the summary judgment rendered on (1) their claims against AWC for “negligence, gross negligence, and negligence per se,” except for their claims for “permissive use” negligence and vice-principal-liability negligence, and (2) their vicarious-liability theories of negligent entrustment and joint enterprise. Consistent with these representations, their brief does not challenge the rendition of judgment on the vicarious-liability theories of negligent entrustment and joint enterprise. 

Second, although AWC’s summary-judgment motion did not attack appellants’ claim that AWC wasnegligent in controlling its intoxicated employee, Jeannie Davis, appellants do not challenge the summary judgment for having disposed of this negligence claim. 

Third, we note that, although appellant Stevenson pleaded that AWC was vicariously liable for any direct liability that Sam Davis might have to appellants, appellantsdo not challengetherendition of judgment on this vicarious-liability basis; rather, their briefing focuses solely on AWC’s vicarious liability for Jeannie Davis’s negligence under various liability theories. 

Accordingly, we must affirm the summary judgment rendered on the following claims and liability theories: 



! 

any direct-liability claims against AWC for negligence, gross negligence, and negligence per se, including that for negligent control of an intoxicated employee, but not those for “permissive use” and vice-principal-liability negligence; 



! 

joint-enterprise liability of AWC; 



! 

vicarious-liability of AWC for its negligent entrustment of the vehicle to Jeanne Davis; and 



! 

vicarious-liability of AWC for Sam Davis’s actions underlying all claims against him. 



See Jacobs v. Satterwhite, 65 S.W.3d 653, 655 (Tex. 2001) (holding that court of appeals errs in reversing summary judgment on claim when appellant does not complain of judgment’s rendition on that claim); Bates v. Dallas Indep. Sch. Dist., 952 S.W.2d 543, 550 (Tex. App.—Dallas 1997, writ denied) (providing that appellate court may refuse to consider issue conceded by party at oral argument); accord Tourneau Houston, Inc. v. Harris County Appraisal Dist., 24 S.W.3d 907, 909 (Tex. App.—Houston [1st Dist.] 2000, no pet.). 

B. Respondeat Superior 

In issue two, appellants argue that the trial court erred in rendering summary judgment for AWC on the basis of respondeat superior liability for Jeannie Davis’s negligence, gross negligence, and negligence per se. 

1. The Law 

“Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong.” Baptist Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998). “[A]n employer is liable for its employee’s tort only when the tortious act falls within the scope of the employee’s general authority in furtherance of the employer’s business and for the accomplishment of the object for which the employee was hired.” Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002). The employee’s actionable conduct must be of the same general nature as the conduct authorized by the employer or must be incidental to the conduct authorized by the employer. Id. Therefore,“if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.” Id. 

2. The Relevant Facts 

Jeannie Davis went to care for or to ride the horse at the stables of Ava Urbanovsky about one to three times a week. She generally went to the stables from 

6:00 to 9:00 p.m. on weekday evenings, after leaving work at AWC around 5:00 p.m., or during the daytime on the weekends. 

On February 27, 2002, a work day, Jeannie Davis went to the stables to tend to the horse some time between 6:15 and 7:00 p.m. She called her husband from the stables at about 6:45 p.m. Urbanovsky twice talked to Jeannie Davis in person at the stables: the first time, between 7:00 and 8:30 p.m.; the second time, about 30 to 40 minutes later. Urbanovsky and Jeannie Davis continued working with the horses at the stable for another hour after Urbanovsky came out the second time, until about 

10:00 that evening. When Urbanovsky left, Jeannie Davis told her that Jeannie would finish putting the horse up, braid his tail, and turn out the lights, all of which Urbanovsky estimated would have taken Jeannie Davis only about another 30 minutes to complete, so that Jeannie Davis might have finished with the horse between 10:30 and 10:45 p.m. 

Urbanovsky testified that Jeannie Davis did not appear or smell intoxicated, and that Urbanovsky did not observe Jeannie drink alcohol, either time that Urbanovsky spoke with Jeannie at the stable that night. The accident occurred about 

1:00 on the morning of February 28, 2002—approximately two to two and a half hours after the time that Urbanovskyestimatedthat Jeannie Davis would have left the stables. It was uncommon for Jeannie Davis to stay out past 11:00 or 11:30 at night. Her normal practice was to return home after having tended to the horse. It would have taken her only about 30 minutes to return home from the stables, but she did not go home; instead, she drove in what appears to have been a completely different direction on the highway, then had the accident two and a half hours later after having become highly intoxicated. No one had any idea where Jeannie Davis went after having tended to the horse. 

3. Discussion 

Appellants contend that they presented summary-judgment evidence raising a fact issue on whether the horse or the vehicle were owned by AWC or Jeannie Davis and, thus, on whether Jeannie Davis was on her “employer[’s] business to feed and care for the company horse” at the time of the accident. However, we need not determine if appellants raised genuine issues of material fact concerning the ownership of the horse or vehicle in order to dispose of this challenge, and we thus assume without deciding for the moment that appellants raised a fact issue on these matters. Our focus is instead on whether Jeannie Davis was in the course and scope of her employment with AWC during the two to two and a half hours after having cared for the horse, in which time period she deviated from her usual route home, became highly intoxicated, and had the accident. The undisputed evidence is that Jeannie Davis did not appear intoxicated or smell of alcohol when she tended the horse until at least 10:00 the night before the accident; that she was estimated to have remained at the stables only about 30 or 45 minutes more; that she normally returned home after caring for the horse, which was a 30-minute drive; and that she deviated from that usual schedule and course that night for two to two and a half hours, during which time she became highly intoxicated. The summary-judgment evidence thus conclusively established that Jeannie Davis was not acting “in furtherance of the employer’s business” after she finished caring for the horse and that she deviated from her usual route home, for whatever her own purposes were, and became intoxicated over the next two and a half hours. See Minyard Food Stores, Inc., 80 S.W.3d at 577. 

We hold that AWC was entitled to traditional summary judgment on appellants’ vicarious-liabilitytheorythat it was liable for Jeannie Davis’s negligence, gross negligence, or negligence per se based on respondeat superior. Accordingly, we further hold that the trial court properly rendered summary judgment on appellants’ theory that AWC was liable under respondeat superior. 

We overrule issue two. 

C. Alter Ego and “Reverse” Corporate Veil Piercing 

In their first issue, appellants argue that the trial court erred in rendering summary judgment in favor of AWC on the basis that no alter ego liability existed for Jeannie Davis’s tortious acts. 

1. The Law 

Piercing the corporate veil is not a cause of action, but is instead a means of imposing liability for an underlying cause of action. Gallagher v. McClure Bintliff, 740 S.W.2d 118, 119 (Tex. App.—Austin 1987, writ denied). In general, courts will “disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.” Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986).[5] Specifically, courts disregard the corporate fiction in tort cases in six general instances: 



(1) 

when the fiction is used as a means of perpetrating fraud; 



(2) 

where a corporation is organized and operated as a mere tool or 




business conduit of another . . . ; 




(3) 

where the corporate fiction is resorted to as a means of evading an existing legal obligation; 


(4) 

where the corporate fiction is employed to achieve or perpetrate monopoly; 


(5) 

where the corporate fiction is used to circumvent a statute; and 



Castleberry has been limited by statute. See TEX. BUS. CORP. ACT ANN. art. 2.21(2), (3) (Vernon 2003) (recodified effective January 1, 2006 at TEX. BUS. ORGS. CODE ANN. § 2.223 by Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 1, 2003 Tex. Gen. Laws 267, 427); see also Willis v. Donnelly, 199 S.W.3d 262, 271–72 (Tex. 2006) (recognizing that article 2.21 limited Castleberry in specific situations). However, this case does not involve a contractual obligation or anything arising from it, which is the general application of article 2.21. See TEX. BUS. CORP. ACT ANN. art. 2.21(2); see also Gerard Gaspard II, ATexas Guide to Piercing & Preserving the Corporate Veil, 31-SEP Bull. Bus. L. Sec. St. B. Tex. 24, 34 (Sept. 1994) [hereinafter “Gaspard”] (“[T]he amendments do not in any way limit the application of any of the possible corporate disregard theories [from Castleberry] to a tort claim.”). Additionally, article 2.21 limits the use of alter ego and like theories when a claimant seeks to hold a shareholder liable for a corporate obligation; here, in contrast, appellants seek to hold a corporation liable for its shareholder’s tortious action under a reverse-piercing theory. SeeIn re Moore, 379 BR 284, 292 n.7 (N.D. Tex. 2007); Glenn D. West, W. Benton Lewis Jr., Corporations, 61 SMU L. Rev. 743, 746–47 (Summer 2008). Accordingly, article 2.21 does not apply. 

19 

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong. Id. at 272 (footnotes omitted; emphasis added). The court also indicated that “[i]nadequate capitalization is another basis for disregarding the corporate fiction.” Id. at 272 n.3. Disregard of the corporate fiction on any of the bases identified above is “an equitable doctrine” to which “Texas takes a flexible fact-specific approach focusing on equity.” Castleberry, 721 S.W.2d at 273. In large part because of this focus on equity, “[t]he different bases for disregarding the corporate fiction involve questions of fact,” which, absent “very special circumstances,” “should be determined by the jury.” Id. at 277. “Courts have generallybeenless reluctant to disregard the corporate entity in tort cases than in breach of contract cases.” See Lucas v. Tex. Indus., Inc., 696 S.W.2d 372, 375 (Tex. 1984). Nonetheless, the corporate fiction generally will 

not be disregarded absent exceptional circumstances. See Lucas, 696 S.W.2d at 374. Each of the bases identified in Castleberry for disregarding the corporate form 

6

“involve[s] some type of wrongdoing” —or in the words of Castleberry, injustice or inequity. “By ‘injustice’ and ‘inequity’ we do not mean a subjective perception of unfairness by an individualjudgeorjuror; rather, these words are used in Castleberry 

Gaspard at 31; see SSP Partners v. Gladstrong Invs. (USA) Corp., 275 S.W.3d 444, 454 (Tex. 2008) (“Each example [of the six examples given in Castleberry] involved an element ofabuseofthe corporate structure, including example (2), alter ego . . . .”). 

as shorthand references for the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like.” SSP Partners v. Gladstrong Invs. (USA) Corp., 275 S.W.3d 444,455 (Tex. 2008) (citation and footnote omitted). Therefore, although “the relationship between two entities” is one consideration to disregarding the corporate form, “[t]he other consideration is whether the entities’ use of limited liability was illegitimate.” Id. 

The alter ego theory of liability occurs under the second situation, italicized above, from Castleberry: “where a corporation is organized and operated as a mere tool or business conduit of another . . . .” Castleberry, 721 S.W.2d at 272. “Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.” Id. It “is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.” Id. Its rationale is that “‘if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors.’” (quoting HENRY WINTHROP BALLANTINE, BALLANTINE ON CORPORATIONS § 123 at 294 (1946)). 

Appellants seek to hold AWC liable for its shareholder’s tortious acts, which is a theory of “outsider reverse corporate veil piercing.” See Zahra Spiritual Trust 

v. U.S., 910 F. 2d 240, 243–44 (5th Cir. 1990) (applying Texas alter ego law to reverse-piercing situation); Glenn D. West, W. Benton Lewis Jr., Corporations, 61 SMU L. Rev. 743, 747, 748 (Summer 2008) (“In an outsider reverse veil piercing claim, the creditors of a shareholder of a corporation attempt to execute upon the assets of that corporationin orderto satisfyclaims against suchshareholder.”) (citing Gregory S. Crespi, The Reverse Pierce Doctrine: Applying Appropriate Standards, 16 J. Corp. L. 33, 37–38, 55–56 (Fall 1990)). Although an outsider reverse-piercing case can involve some unique policy considerations, similar equitable principles apply to both direct- and reverse-piercing, such as that the veil will be pierced only when necessary to prevent an injustice and in “exceptional circumstances.” See e.g., Cappuccitti v. Gulf Indus. Prods., Inc., 222 S.W.3d 468, 481–82 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (applying direct veil piercing alter ego principles to reverse corporate veil piercing situation); In re Moore, 379 B.R. 284, 294–95, 296 (N.D. Tex. 2007) (same, although also noting considerations that might apply in some reverse-piercing situations, such as consequences to creditors and innocent stakeholders and priorities under bankruptcy law). 

2. Application of the Law to the Facts 

AWC argues on appeal that reverse corporate veil piercing is only a post-judgment collection mechanism, but it did not raise this argument until its summary-judgment reply. “[A] movant may not use a reply brief . . . to assert new grounds for summary judgment.” Comm’y Initiatives, Inc. v. Chase Bank of Tex., N.A., 153 S.W.3d 270, 280 (Tex. App.—El Paso 2004, no pet.); see Sanchez v. Mulvaney, 274 S.W.3d 708, (Tex. App.—San Antonio 2008, no pet.) (“[A] movant may not use a reply brief . . . to assert new grounds for summary judgment. Therefore, we do not consider any arguments raised in [the movant’s]replyand we will consider only those grounds specifically raised in [his] motion for summary judgment in order to determine the basis on which he moved for judgment.”). 

AWC’s no-evidence summary-judgment motion attacked both elements of appellants’ alter ego liability theory: (1) lack of separateness and (2) injustice. [7] See Castleberry, 721 S.W.2d at 272. Appellants argue that the trial court erred in rendering summary judgment because they produced some evidence to support each of these elements. 

7 

AWC also moved for traditional summary judgment on the ground that the only underlying claim on which alter ego liability was premised was that of negligent entrustment, which AWC had conclusively disproven. This ground does not support summary judgment, however, because appellants’ allegations of alter ego liability were not premised solely on negligent entrustment. 

a. Whether appellants presented some evidence that there was “such unity between corporation and individual that the separateness of the corporation has ceased,” see Castleberry, 721 S.W.2d at 272 

When viewed in the light most favorable to appellants, the evidence showed 

the following: ! The Davises severely undercapitalized AWC; ! The Davises’ personal expenses were repeatedly paid from funds 

in AWC’s corporate accounts. ! A substantial number of those funds could not be considered advance dividends because, for example, they exceeded profits. ! The Davises did not adhere to corporate formalities like documenting corporate resolutions, such as for dividend payments, adopting policies or procedures for paying out dividends, or maintaining AWC’s financialrecords in conformity 

with generally accepted accounting principles. We hold that this was some evidence that the Davises and AWC disregarded the corporate form of AWC from its incorporationin 2000 until the 2002 accident to such an extent that AWC’s corporate separateness ceased to exist. Accordingly, we hold that the trial court could not properly have rendered summary judgment for AWC on this element of alter ego. 

b. Whether appellants presented some evidence that “holding only [Jeannie Davis] liable would result in injustice,” see Castleberry, 721 S.W.2d at 272 

This case presents an unusual situation for reverse corporate veil piercing because the summary-judgment evidence, when viewed in the light most favorable to appellants, showed that the Davises disregarded the corporate form by using AWC’s assets to enrich themselves, rather than by sheltering their personal assets in AWC and thereby limiting their personal liability. It also showed that AWC was not making a profit and that, according to appellants’ own tax consultant, AWC was severely undercapitalized and had a bleak future precisely because the Davises had used AWC’s money for personal expenses even when AWC was not profitable. 

Nonetheless (1) the determination of whether to pierce the corporate veil is a 

8

question of fact absent “very special circumstances”; (2) courts have been lessreluctant to disregard the corporate entity in tort cases than in breach-of-contract 

9

cases; and (3) to carry their summary-judgment burden, appellants had to produceonly just more than a scintilla of evidence. [10] In support of their summary-judgment response, appellants produced the inventory filed for Jeannie Davis’s estate. That inventory showed that Jeannie had only around $23,000 of personal assets to compensate appellants’ families for the death of their children—despite the fact that she had allegedly benefitted from taking AWC’s assets. The inventory also recited that Jeannie’s shares in AWC had no value, meaning that the sale of those shares 

8 

Castleberry, 721 S.W.2d at 277. 

9 

See Lucas v. Tex. Indus., Inc., 696 S.W.2d 372, 375 (Tex. 1984). 

10 

See Malcomson Rd. Util. Dist. v. Newsom, 171 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). 

could not be used to satisfy any judgment for appellants. Additionally, appellants’ 

summary-judgment evidence included a summary of insurance coverage for the 

vehicle involved in the collision, which indicates liability coverage of only 

“25,000/50,000.” This is some evidence that appellants would be harmed if the 

corporate veil that Jeannie herself was alleged to have repeatedly and flagrantly 

disregarded was not pierced to allow appellants whatever additional recovery they 

might obtain from AWC’s assets. See Mancorp, Inc. v. Culpepper, 836 S.W.2d 844, 

846 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (applying pre-Castleberry 

authority to hold that “[t]he ‘injustice’ to be avoided in [direct] alter ego cases is that 

of leaving the plaintiff with an uncollectible judgment against the corporation, while 

allowing its alter ego to go free.”) (emphasis added).[11] 

Before Castleberry, in direct-piercing alter ego cases, it had been generally understood that the plaintiff himself had to suffer harm before the corporation’s veil would be pierced, which in tort cases often meant that the corporation was undercapitalized—in this reverse-piercing situation, the equivalentwould be Jeannie Davis’s having insufficient funds. See Lucas, 696 S.W.2d at 374–75 (reasoning, for alter ego to apply in tort case, that “the financial strength or weakness of the corporate tortfeasor is an important consideration” because “[i]f the corporation responsible for the plaintiff’s injury is capable of paying a judgment upon proof of liability, then no reason would exist to attempt to pierce the corporate veil and have shareholders pay for the injury,” but if “the corporation sued is not reasonably capitalized in light of the nature and risk of its business, the need might arise to attempt to pierce thecorporate veil and hold the parent corporation liable.”); Roy E. Thos. Constr. Co. v. Arbs, 692 S.W.2d 926, 937–38 (Tex. App.—Fort Worth 1985), writ ref’d n.r.e., 700 S.W.2d 919 (Tex. 1985); ROBERT W. HAMILTON et al., 20 TEXAS PRACTICE SERIES, Business Organizations § 26.12 (2nd ed. 2004) [hereinafter “Business Organizations”]. We need not decide if Castleberry 

Because appellants produced evidence that would demonstrate the type of injustice for which reverse corporate veil piercing would lie, summary judgment on this basis would have been improper. 

4. Conclusion 

We hold that the trial court erred in rendering summary judgment on appellants’ claims allegingthat AWC wasvicariouslyliablefor the negligence, gross negligence, and negligence per se of Jeannie Davis on the basis of its being her alter ego. 

We sustain appellants’ first issue. 

D. Other Claims, Vicarious-Liability Theories, and Defensive Allegations That Were Not Expressly Attacked By AWC’s Summary-Judgment Motion 

In issue three, appellants argue that the trial court erred in rendering summary judgment on the following claims, liability theories, and allegations because they were not addressed in AWC’s summary-judgment motion: (1) the claims of “permissive use” and “vice-principal-liability” negligence;(2) the vicarious-liability theories of ostensible agency, apparent agency, and agency by estoppel; and (3) the 

eased that burden by removing that requirement from corporate veil piercing law—see, e.g., Pan E. Exploration Co. v. Hufo Oils, 855 F.2d 1106, 1132 (5th Cir. 1988) and Business Organizations, § 26.13—because, even if Castleberry did not relieve a plaintiff from having to demonstrate harm to himself, appellants produced some evidence that they were harmed. 

plaintiff appellants’ three requests for declaratory relief.[12] 

It is well settled that “[a] motion for summary judgment must itself expressly 

present the grounds upon which it is made, and must stand or fall on these grounds 

alone.” Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997). 

Accordingly, “[i]t is axiomatic that one may not be granted judgment as a matter of 

law on a cause of action not addressed in a summary judgment proceeding.” 

Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983). It is thus 

generally reversible error for a trial court to render summary judgment on a claim not 

addressed in the summary-judgment motion. See Dubose v. Worker’s Medical, P.A., 

117 S.W.3d 916, 922 (Tex. App.—Houston [14th Dist.] 2003, no pet.). 

Appellants also contend that their allegations of “estoppel byconduct, estoppel by action, estoppel by oath, judicial estoppel, [and] equitable estoppel” regarding the Davises’ ability to claim dividends were “theories of liability,” on which the trial court could not render summary judgment sua sponte. However, these allegations are not theories of liability or claims; rather, they are akin to affirmative defenses. See Stanolind Oil & Gas Co. v. Midas Oil Co., 143 S.W.2d 138, 141 (Tex. Civ. App.—Austin 1940, writ ref’d) (concluding that allegation of estoppel by conduct was allegation of affirmative defense); Sefzik v.City of McKinney, 198 S.W.3d 884, 895 (Tex. App.—Dallas 2006, no pet.) (indicating that equitable estoppel is affirmative defense); Dallas Sales Co. Inc. v. Carlisle Silver Co., 134 S.W.3d 928, 931 (Tex. App.—Waco 2004, pet. denied)(indicating thatjudicialestoppel is affirmative defense). A defendant moving for summary judgment against a plaintiff’s claims and theories of liability need not also attack the plaintiff’s “defensive” allegations (e.g., this type of estoppel). See Dobbs v. Camco, Inc., 445 S.W.2d 565, 571 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref’d n.r.e.). 

Nonetheless, some courts of appeals, including our own, have recognized a very limited exception to the general rule. Although the exception’s application has been expressed in various ways,[13] it can be reduced to two: (1) when the movant has conclusively proved or disproved a matter (usually corresponding to a claim’s element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law or (2) when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed 



13 

! 

The unaddressed claim is a mere reiteration of a claim on which the 





movant has already shown itself entitled to summary judgment. See, 





e.g., Rotating Servs. Indus., Inc. v. Harris, 245 S.W.3d 476, 487 (Tex. 





App.—Houston [1st Dist.] 2007, pet. denied). 




! 

The movant has conclusively disproven an ultimate fact that is central 





to the unaddressed causes of action. See Smith v. Heard, 980 S.W.2d 





693, 697 (Tex. App.—San Antonio 1998, pet. denied). 




! 

The motion conclusively disproves an element common both to the 





claim that the motion attacked and to the claim that the motion did not 





attack. See, e.g., Harris, 245 S.W.3d at 487. 




! 

The unaddressed causes of action are derivative of the addressed cause 





of action, see Dubose v. Worker’s Medical, P.A., 117 S.W.3d 916, 922 





(Tex. App.—Houston [14th Dist.] 2003, no pet.). 




! 

The motion’s grounds are broad enough to address (or to contemplate 





or to encompass) the unaddressed claims. See, e.g., Harris, 245 S.W.3d 





at 487; Blancett v. Lagniappe Ventures, Inc., 177 S.W.3d 584, 592 (Tex. 





App.—Houston [1st Dist.] 2005, no pet.). 




! 

The unaddressed claims were “contemplated” by the motion’s grounds. 





See Judwin Props., Inc. v. Griggs & Harrison, 911 S.W.2d 498, 503 





(Tex. App.—Houston [1st Dist.] 1995), writ denied, 11 S.W.3d 188 





(Tex. 2000) (disapproving language unrelated to cited holding). 





29 



claim. (See citations in footnote 13, supra.) For the exception to apply, this Court 

has always required a very tight fit between what was proved or disproved in the 

motion and what elements the unaddressed claim, as it was alleged, required:[14] 

otherwise, the exception could swallow the rule. 

Relying on the exception, AWC argues that the trial court properly rendered 

judgment on claims and liability theories not challenged directly in its summary-

judgment motion. For two reasons, we conclude that the exception does not apply. 

First, apart from appellants’ requests for declaratory relief, none of the 

unaddressed liability theories or claims is derivative of any other. As for the requests 

for declaratoryrelief,AWC did not conclusively prove its entitlement to judgment on 

the liability theories underlying these requests. For example, two of the declaratory 

See, e.g., Harris, 245 S.W.3d at 487–88 (applying exception to newly added estoppel claims that were “but alternative statements of [plaintiff’s] previously asserted claims to the [insurance] policy proceeds,” when motion had conclusively established that plaintiffs were not entitled to policy’s proceeds); Hall, 177 S.W.3d at 651 (refusing to apply exception because assault claim, which motion had attacked, had different elements from claim for intentional infliction of emotional distress, which motion had not attacked, even though both claims arose out of same general incident); Blancett, 177 S.W.3d at 592 (“[T]he exception . . . does not apply . . . because the two theories [relating to allegations that defendant created and maintained unsafe condition in stairway] that [defendant] asserted in its summary judgment motion as to why it owed no duty to [plaintiff] do not conclusively negate [plaintiff’s] assertion in her supplemental petition that [defendant] allegedly made negligent repairs or failed to repair the alleged defect.”). 

requests were derivative of appellants’ alter ego liability theory against AWC, on which we have already held that there is a fact issue. The third declaratory request asked for a determination of who owned the vehicle, making it derivative of the “ownership” element of negligent entrustment,[15] a ground on which AWC did seek summary judgment. However, the certificate of title that AWC produced created only a rebuttable presumption of the Davises’ ownership, see, e.g., Dean v. Lowery, 952 S.W.2d 637 (Tex. App.—Beaumont 1997, pet. denied), and appellants rebutted that presumption with evidence that the Davises had used funds from an AWC account to make all payments for the vehicle and that AWC sometimes paid for gasoline and maintenance. See Kelly v. Circle K Corp., No. 01-87-00778-CV, 1988 WL 114030, at *2 (Tex. App.—Houston [1st Dist.] Oct. 27, 1988, writ denied) (not designated for publication) (holding that summary judgment for lack of standing or capacity to sue was improper because presumption of ownership in person other than plaintiff arising from car’s title certificate was rebutted by testimony that plaintiff paid for car with her own money, drove car, and was car’s actual owner). 

Second, as alleged, the elements of the claims and theories on which AWC sought summary judgment were not exactly the same as those on which it did not. Compare Baptist Mem’l Hosp. Sys., 969 S.W.2d at 947 (elements of respondeat 

See, e.g., Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987). 

superior) and Castleberry, 721 S.W.2d at 271 (elements of alter ego) with Baptist Mem’l Hosp. Sys., 969 S.W.2d at 947, 947 n.2 (elements of various agency theories). Although there is some similarity in the abstract between the elements of a vice-principal-liability negligence claim (not challenged here) and a respondeat superior liability theory (challenged and conclusively disproved here),[16] appellants’ allegations supporting this claim and theory differed in one important respect: for the vice-principal-liability claim, appellants also alleged that Jeannie Davis, as AWC’s vice principal and in a supervisory capacity, negligently allowed herself, as employee, to drive drunk. The proof and arguments supporting AWC’s respondeat superior summary-judgment ground do not fully address this vice-principal-liability allegation. We will not evaluate the propriety of judgment’s rendition on the unaddressed claim when the elements are not exactly the same, when any differences between the claim and the theory were not fully explored below, and when the case must be remanded in any event. 

Compare, e.g., Rhodes, Inc. v. Duncan, 623 S.W.2d 741, 744 (Tex. App.—Houston [1st Dist.] 1981, no writ) (“liability . . . is limited to those acts which are referable to the company’s business to which the vice principal is expressly, impliedly or apparently authorized to transact”) with Goodman, 80 S.W.3d at 577 (employee’s acts must be “within the scope of the employee’s general authority in furtherance of the employer’s business and for the accomplishment of the object for which the employee was hired”). Because “permissive use” has not been recognized as a cause of action, it has no elements to compare against the elements of the claims and theories on which AWC sought summary judgment. Compare Renfrow, 130 S.W.2d 70; Coronado, 596 S.W.2d 502. 


3. Disposition 

We hold that the trial court erred in rendering summary judgment on (1) the claims of “permissive use” and vice-principal-liability negligence; (2) the vicarious-liability theories of ostensible agency, apparent agency, and agency by estoppel; and 

(3) the plaintiff appellants’ three requests for declaratory relief. We sustain issue three to the extent that it complained of judgment’s rendition on these claims, requests, and liability theories. 





Summary Judgment for Sam Davis 

Sam Davis moved for traditional and no-evidence summary judgment only on appellants’ negligent-entrustment liability theory against him. On appeal, appellants expressly state that they do not contest the summary judgment rendered on this liability theory. They also advised the Court at oral argument that they were not challenging the summary judgment rendered on “fraud,” which we interpret to mean appellant Stevenson’s request that a constructive trust be imposed because of Sam Davis’s alleged fraudulent waste of AWC’s assets. Accordingly, we must affirm the summary judgment rendered on appellants’ negligent-entrustment liability theory and on appellant Stevenson’s request for a constructive trust against Sam Davis. See Jacobs, 65 S.W.3d at 655; Garcia, 4 S.W.3d at 889; Bates, 952 S.W.2d at 550. 

Sam Davis did not move for summary judgment on any claim or theory of liability besides negligent entrustment. In addition to alleging that liability theory, all appellants also alleged that Sam Davis (presumably as the alter ego of AWC) was liable for AWC’s direct liability for (1) “negligent control of [an] intoxicated employee” and (2) the “permissive use” of the vehicle by a corporate vice-principal of AWC. Likewise, all appellants alleged that Sam Davis was vicariously liable (again, presumably as the alter ego of AWC) for AWC’s vicarious liability (under theories of alter ego, respondeat superior, “vice principal responsibility,” and various agency principles) for Jeannie Davis’s negligence, gross negligence, and negligence per se. Finally, the plaintiff appellants sought the same declaratory relief as discussed earlier. As stated, Sam Davis did not move for summary judgment on any of these claims or liability theories. For the same reasons that we declined to apply the exception to the rule that summary judgment cannot be rendered on a claim not addressed in the motion to the claims and liability theories against AWC, we also decline to apply them to the claims and liability theories against Sam Davis. 

We hold that the trial court erred in rendering summary judgment on all claims and liability theories against Sam Davis except for the liability theory of negligent entrustment and the request for imposition of a constructive trust, the propriety of which we do not reach because the judgment on them is not challenged on appeal. We sustain issue three with respect to Sam Davis. 



Conclusion 

We reverse the summary judgment in favor of AWC that was rendered on (1) appellants’ theory that AWC was liable for Jeannie Davis’s tortious conduct under the theories of ostensible agency, apparent agency, and agency by estoppel; (2) appellants’ “permissive use” and vice-principal-liability negligence claims against AWC; (3) appellants’ liability theory of alter ego; and (4) the plaintiff appellants’ requests for declaratory relief. We affirm the judgment rendered in favor of AWC in all other respects. We affirm the judgment rendered in favor of Sam Davis on appellants’ negligent-entrustment liability theory and on appellant Stevenson’s request that a constructive trust be imposed for his alleged fraud. We reverse the summary judgment rendered in favor of Sam Davis in all other respects. 

Tim Taft Justice 

Panel consists of Justices Keyes, Alcala, and Taft.[17] 

Justice Tim Taft, who retired from the First Court of Appeals on June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on April 22, 2008.