ACCEPTED
13-15-00327-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/28/2015 3:02:37 PM
Dorian E. Ramirez
CLERK

Case No. 13-15-00327-CV

In The Thirteenth Court of Appeals
Corpus Christi, Texas

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/28/2015 3:02:37 PM
DORIAN E. RAMIREZ
Clerk

BTB REFINING, LLC

Appellant,

v.

MOHAMMAD ANWAR FARID AL-SALEH,

Appellee.

On Appeal from No. 2014-DCV-5860-G, 319th Judicial District Court,
Nueces County, Texas, Hon. David V. Stith

## BRIEF OF APPELLEE

NOLAN C. KNIGHT[*]
  TX 24027125
  E-MAIL: nknight@munsch.com
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Daniel D. Pipitone
  TX 16024600
  E-MAIL: dpipitone@munsch.com
Kenneth W. Bullock, II
  TX No. 24055227
  E-MAIL: kbullock@munsch.com
MUNSCH HARDT KOPF & HARR, P.C.
Pennzoil Place
700 Milam Street, Suite 2700
Houston, Texas 77002
Telephone:  (713) 222-1470
Facsimile:  (713) 222-1475

**ORAL ARGUMENT REQUESTED**

_____

[*] Lead appellate counsel

# I. TABLE OF CONTENTS

**Page(s)**

I. TABLE OF CONTENTS ...................................................................................i

II. INDEX OF AUTHORITIES ........................................................................ iii

III. STATEMENT OF THE CASE .......................................................................v

IV. STATEMENT OF FACTS ............................................................................1

    A. The Lower Court Enjoined Fraudulent Transfer of Assets...................1

    B. BTB has not challenged the Meritorious Justifications for
        the Injunctive Relief .........................................................................3

V. SUMMARY OF ARGUMENT ......................................................................6

VI. ARGUMENT AND AUTHORITIES ...........................................................8

    A. Injunctive Relief is Appropriate to Prevent Fraudulent
        Dissipation of Assets .........................................................................8

        1. Applicable legal principles – Courts' equity
            powers to prevent avoidance of judgments.............................8

        2. The Texas Uniform Fraudulent Transfers Act in
            any event authorizes even "prejudgment"
            injunctive relief ....................................................................10

        3. BTB's references to attachment and garnishment
            authorities are misguided .......................................................18

    B. Alter Ego is not Equivalent to an Attempt to Satisfy a
        Judgment "out of" an LLC Membership Interest..............................22

        1. Applicable legal principles .....................................................22

        2. BTB is directly liable as an alter ego .......................................23

VII. PRAYER.....................................................................................................24

VIII.    CERTIFICATE OF COMPLIANCE ..............................................................26

IX.     CERTIFICATE OF SERVICE.................................................................27

## II. INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Animale Group Inc. v. Sunny's Perfume, Inc.*,
256 Fed. Appx. 707 (5th Cir. 2007)................................................................22

*Butnaru v. Ford Motor Co.*,
84 S.W.3d 198 (Tex. 2002).............................................................................6

*Deckert v. Independence Shares Corp.*,
311 U.S. 282 (1940)..................................................................................12, 22

*Fort Bend County Drainage Dist. v. Sbrusch*,
818 S.W.2d 392 (Tex. 1991) ...........................................................................3

*Frontera Generation Ltd. P'ship v. Mission Pipeline Co.*,
400 S.W.3d 102 (Tex. App.—Corpus Christi 2012, no pet.).............................4

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)..............................................................................12, 18, 22

*Jackson Law Office v. Chappell*,
37 S.W.3d 15 (Tex. App.—Tyler 2000, no pet.)..............................................19

*JSC Foreign Economics Ass'n Technostroyexport v. International
Development and Trade Services, Inc.*,
295 F. Supp. 2d 366 (S.D. N.Y. 2003) ...........................................................20

*Martin v. U.S. Merch. Fin. Group, Inc.*,
No. 05–13–00999–CV, 2014 WL 6871392.................................................8, 22

*Metra United Escalante, L.P. v. Lynd Co.*,
158 S.W.3d 535 (Tex. App.—San Antonio 2004, no pet.) .......................*passim*

*Shook v. Walden*,
368 S.W.3d 604 (Tex. App.–Austin 2012, no pet.)....................................23-24

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) .........................................................................2

*U.S. Lawns, Inc. v. Castillo*,
  347 S.W.3d 844 (Tex. App.—Corpus Christi 2011, no pet.) ...............................3

*United Bank Metro v. Plains Overseas Group, Inc.*,
  670 S.W.2d 281 (Tex. App.—Houston [1st Dist.] 1983, no writ) ............... 14-15

*Wilson v. Davis*,
  305 S.W.3d 57 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ........................19

*Wm. Passalacqua Builders, Inc. v. Resnick Dev. South, Inc.*,
  933 F.2d 131 (2nd Cir. 1991) ........................................................................20

*Wohlstein v. Aliezer*,
  321 S.W.3d 765 (Tex. App.—Houston [14th Dist.] 2004, no pet.) .....................2

**STATUTES**

TEX. BUS. ORG. CODE § 101.112 .................................................................22, 23

TEX. BUS. & COM. CODE § 24.005 ........................................................................2

TEX. BUS. & COM. CODE § 24.006 ........................................................................2

TEX. BUS. & COM. CODE § 24.008 ...................................................10, 11, 15, 16

TEX. CIV. PRAC. & REM CODE § 35.003.................................................................1

TEX. CIV. PRAC. & REM CODE § 65.001...............................................................20

TEX. CIV. PRAC. & REM. CODE § 65.011.............................................................9, 15

**OTHER AUTHORITIES**

TEX. R. APP. PROC. 33.1(a)(1)..............................................................................5

### III. STATEMENT OF THE CASE

Appellee Mohammad Anwar Farid Al-Saleh secured valid and enforceable judgments against defendant below Harry Sargeant, III; and in the proceedings before the lower court, sought equitable remedies to satisfy the judgments with assets Mr. Sargeant has sheltered in an "alter ego" entity known as BTB Refining, LLC ("BTB"). *See* Clerk's Record ("C.R."), 38 – 71. After a two-day hearing, during which the lower court heard extensive testimony from multiple fact and expert witnesses and admitted more than 100 exhibits, the lower court found Mr. Sargeant was attempting to fraudulently transfer the assets in question out of the country to avoid satisfaction of the judgments. (C.R. at 337 – 339). The court therefore entered a temporary injunction prohibiting transfer of the assets pending the trial on the merits. *Id.*

BTB herein attempts to upset the lower court's injunctive relief, without challenging the meritorious bases for the relief—but instead by mischaracterizing the nature of relief granted by the court. BTB's contentions fail as a matter of law.

## IV.  STATEMENT OF FACTS

### A.  The Lower Court Enjoined Fraudulent Transfer of Assets

In the lower court, Mr. Al-Saleh established he has valid and enforceable fraud judgments from 2011 against Mr. Sargeant, as well as one of Mr. Sargeant's close business partners, Mustafa Abu-Naba'a ("Abu-Naba'a"), and their jointly-owned company, International Oil Trading Company, LLC; originally entered by a Florida court, then lawfully domesticated in Texas, for in excess of $32,370,243.89 (with interest that continues to accrue). (C.R. at 5 – 26). *See also* TEX. CIV. PRAC. & REM CODE § 35.003(b).[1]  He further established BTB is Mr. Sargeant's "alter ego," in part because the United States District Court for the Southern District of Texas found precisely that in a case styled *PDVSA Petroleo, S.A. v. Trigeant, Ltd.*, Case No. 2:09-cv-00038, in which that court held it could exercise personal jurisdiction over Mr. Sargeant (a Florida resident) because he "exert[ed] such dominion and control over . . ." BTB (a Texas resident) such that "in reality they are the same . . ." (C.R. at 99, 112);[2] and based on significant additional evidence presented during the temporary injunctive hearing in this matter. (C.R. at 338).

---

[1] The judgments included a $28,800,000 award of damages, $85,489.97 in costs, and prejudgment interest of $3,484,753.92.

[2] In its Brief of Appellant, BTB provides a detailed discussion of the facts that gave rise to the *PDVSA Petroleo* litigation, pp. 3 – 5; without noting the alter ego finding the court made regarding BTB and Mr. Sargeant in the context of personal jurisdiction. Indeed, in a parallel, and redundant mandamus action BTB has filed in this Court (Case No. 13-15-00395-CV), BTB has suggested the *PDVSA Petroleo* holding is not indicative of BTB's alter ego status (*see* 9/16/15 "Reply," pp. 2 – 3; Case No. 13-15-00395-CV)—but the Southern District of Texas

The lower court, as a result, held Mr. Al-Saleh is entitled to a temporary injunction forbidding the offshore transfer and disposition of assets Mr. Sargeant holds through his wholly-owned alter ego BTB—because through an elaborate scheme, Mr. Sargeant was at the time attempting to move the assets to another company he jointly owns with judgment debtor Abu-Naba'a, created under the laws of the Bahamas and operating in the Dominican Republic; thus, placing the assets beyond the jurisdiction of the United States. (C.R. at 338). This attempt to circumvent the preexisting judgments was fraudulent and unjust by any measure—but specifically violated principles codified in Texas' adoption of the "Uniform Fraudulent Transfers Act," TEX. BUS. & COM. CODE §§ 24.005, 24.006; which is "designed to prevent a debtor from defrauding its creditors by moving assets out of reach." *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The lower court enjoined Mr. Sargeant's attempt to consummate the fraudulent scheme—initially by way of temporary restraining order issued on June

---

could penetrate BTB's purported corporate veil and exercise personal jurisdiction over Mr. Sargeant *only* because of a legal principle that the citizenship of the business entity (BTB) is attributed to its member (Sargeant) because they are "in reality . . . the same . . . ." *Cf. Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) ("the fiduciary-shield doctrine—which holds that an individual's transaction of business within the state solely as a corporate officer does not create *personal jurisdiction* over that individual though the state has in personam jurisdiction over the corporation[]—*does not apply* when courts are willing to disregard the corporate entity, usually on the theory that the individual or subsidiary is the *alter ego* of the corporation or parent.") (emphasis added).

2

4, 2015; and affirmed in a July 2, 2015 temporary injunction issued after a two-day evidentiary hearing. (C.R. at 163 – 165, 337 – 339).

**B.**   **BTB has not challenged the Meritorious Justifications for the Injunctive Relief**

BTB has not raised in its Brief of Appellant, and therefore has waived, any challenge to the soundness of the lower court's ruling that Mr. Al-Saleh "will suffer an immediate and irreparable harm and injury if a Temporary Injunction does not issue and that [Mr. Al-Saleh] has no adequate remedy at law." (C.R. at 338). BTB likewise failed to raise or challenge the lower court's well-founded justifications for issuing injunctive relief, including *inter alia*, its findings that "Defendant BTB is the alter ego of Defendant Sargeant . . ." and "property and assets will be moved, wasted, dissipated or otherwise transferred beyond the jurisdictional reach of this or any other United States Court if not *immediately* restrained based upon, among other things, testimony that a significant amount of . . . proceeds have *already* been transferred by BTB." (C.R. at 338) (emphasis added).

Having failed to challenge these meritorious justifications for the temporary injunction, BTB has waived review of the holdings in these proceedings. *See generally U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 846 (Tex. App.—Corpus Christi 2011, no pet.) ("[g]rounds of error not asserted by points of error are considered waived on appeal.") (quoting *Fort Bend County Drainage Dist. v.*

*Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991)). But in no event would there be grounds to overturn the temporary injunction on the present record, because the relief must be affirmed so long as there is "some evidence" or "more than a scintilla" of evidence warranting injunctive relief. *See Frontera Generation Ltd. P'ship v. Mission Pipeline Co.*, 400 S.W.3d 102, 108 (Tex. App.—Corpus Christi 2012, no pet.).

Clearly that is the case here. Mr. Al-Saleh proved BTB is Mr. Sargeant's alter ego. *See, e.g.*, Court Reporter Record ("Cr.R."), Vol. 3, 132:16-133:4; Vol. 3, 134:3-11; Vol. 3, 140:9-141:2 (evidence that although Mr. Sargeant purported to draw no more than a $225,000.00 annual salary from BTB—BTB in reality funneled funds through an intermediary to benefit Mr. Sargeant, including payments to a vendor "building Mr. Sergeant his private yacht"; to pay a $50,000.00 American Express bill on a card actually issued in Mr. Sargeant's name; payment of yet another American Express bill for Mr. Sargeant totaling an eye-popping $298,592.58; and verifiable cash payments, for instance, $75,000.00 to Mr. Sargeant and his wife). Mr. Al-Saleh in fact proved BTB has been used in other schemes to fraudulently procure or shield Mr. Sargeant's assets not just from Mr. Al-Saleh, but employed by Mr. Sargeant as a matter of practice to defraud a series of business partners or interests. *See, e.g.*, (Cr.R. at Vol. 2, 55:8-20) (evidence regarding the fraudulent scheme litigated in the *PDVSA Petroleo*

4

litigation discussed above, and Mr. Sargeant's dishonest attempts to disavow his connection to BTB).[3]

Mr. Al-Saleh further proved Mr. Sargeant actively was attempting to use BTB as a pass-through entity, to funnel millions of dollars to the Bahamian entity (which Mr. Sargeant co-owns with judgment debtor Abu-Naba'a) under the pretext of a "Zero Coupon Promissory Note," that in substance would have transferred staggering sums to the Bahamian entity with absolutely no reciprocal value or consideration exchanged with BTB. (C.R. at 152 – 156) (Zero Coupon Promissory Note).[4]

BTB failed to object to any of the evidence proving these matters, which was presented to the lower court, and therefore in no event has preserved a challenge to the record materials proving the mechanics of the fraudulent avoidance collectively attempted by BTB and Mr. Sargeant. *Cf.* TEX. R. APP. PROC. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely

---

[3] The Southern District of Texas' findings in *PDVSA Petroleo* are dispositive of BTB and Mr. Sargeant's fraudulent conduct, because the court made express findings on the issue. *See, e.g.*, (C.R. at 115) ("Plaintiff established by a preponderance of the evidence all of the elements for a claim of constructive fraud . . . .").

[4] Mr. Al-Saleh also developed evidence of fraudulent, or at minimum highly irregular conduct within BTB that went unchecked by Mr. Sargeant—foreclosing any question the company was not operated as a credible business enterprise. *See, e.g.*, (Cr.R. at Vol. 3, 111:2-24) (evidence a high-level BTB employee distributed $1.8 million from BTB without authorization, likely as an investment in a company owned by the employee; but BTB failed to initiate any discernible disciplinary or legal actions against the employee even after Mr. Sargeant confirmed the incident by way of an outside accounting firm).

request, *objection*, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint . . . .") (emphasis added). Accordingly, the evidentiary record before this Court is uncontested, further amplifying that the soundness of the lower court's decision to enter injunctive relief to halt Mr. Sargeant and BTB's fraudulent scheme simply cannot be challenged by way of this appeal. *Cf. Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (holding a lower court abuses its discretion to enter injunctive relief only if its decision could be deemed "so arbitrary that it exceeded the bounds of reasonable discretion.").

BTB therefore is limited to asserting, and has asserted only what it attempts to treat as a legal defect with the temporary injunction, contending it somehow operates as an impermissible prejudgment "writ of attachment." As a matter of law, BTB's characterization of the injunctive relief is incorrect—and in substance, the relief sought could not be granted without upsetting the lower court's core *factual* findings on alter ego; which BTB has not challenged (nor could successfully challenge) in this appeal.

## V.    SUMMARY OF ARGUMENT

BTB in effect concedes both it and Mr. Sargeant are the bad actors described in the lower court's temporary injunction—by failing to offer this Court

6

any basis to reject the lower court's findings on precisely that issue. (C.R. at 338). It therefore limits itself to appellate arguments entirely contingent upon a characterization of the temporary injunctive relief in the underlying lawsuit that simply is inaccurate. BTB miscasts the legally permissible and factually warranted temporary injunction, as a prejudgment "writ of attachment" on BTB's assets, based on concern those assets will be fraudulently transferred to avoid an obligation of BTB's sole member, Harry Sargeant, III. In support of this characterization, almost without exception, BTB cites case authorities wherein plaintiffs sought to "seize" defendants' assets *before* there was a judgment of any kind, and where there was no question of alter ego liability for a preexisting judgment.

That is why BTB's characterization is unsupportable on the record. In the underlying dispute, final judgments *already* have been entered against Mr. Sargeant, and the sole issue of consequence is BTB and Mr. Sargeant are the *same person* in the eyes of the law, by virtue of alter ego principles. The United States District Court for the Southern District of Texas previously found as much (*see* note 2 *supra*), and the lower court reached the same conclusion following the evidentiary hearing on the merits.

The preexisting judgments therefore are binding on Mr. Sargeant and BTB *in tandem*. Mr. Al-Saleh has not sought, and the lower court did not authorize

anything that can be characterized as a prejudgment "seizure" of a non-debtor's assets. BTB indeed has not propounded any evidence or argument whatsoever demonstrating how it somehow is being prevented for exercising dominion over the monetary assets at issue—save only for its inability to transfer the funds in avoidance of lawful judgments, or placing them beyond the jurisdiction of the lower court in what transparently is a fraudulent scheme.

The lower court found BTB *is* Mr. Sargeant (thus a single judgment debtor), and pending a final trial ruling conclusively resolving as much—the court enjoined Mr. Sargeant (through BTB) from fraudulently dissipating assets to circumvent the judgments. This does not constitute a writ of attachment, and in no event can BTB seriously contend a trial court is prohibited from exercising its powers of equity (in an action seeking exclusively equitable relief) to prevent a fraudulent scheme contemplated to avoid judicial process.

## VI. ARGUMENT AND AUTHORITIES

### A. Injunctive Relief is Appropriate to Prevent Fraudulent Dissipation of Assets

#### 1. *Applicable legal principles – Courts' equity powers to prevent avoidance of judgments*

It is beyond peradventure that alter ego is an appropriate equitable remedy to collect on a preexisting judgment entered against a judgment debtor. *See, e.g., Martin v. U.S. Merch. Fin. Group, Inc.*, No. 05–13–00999–CV, 2014 WL 6871392, **1, 4 – 7 (Tex. App.—Dallas Dec. 8, 2014, no pet.) (affirming trial

8

court finding of alter ego liability against a corporation, for purposes of enforcing a preexisting California judgment for breach of contract against the other alter ego entity). It likewise is beyond peradventure that an injunctive remedy is appropriate to prevent an obligated party, or its alter ego, from disposing of assets in avoidance of even an impending judgment actually related to the assets. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 65.011(2) ("A writ of injunction may be granted if . . . a party performs or is *about to perform* or is procuring or *allowing the performance* of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual . . . .") (emphasis added).

Mr. Al-Saleh has invoked equity for precisely these purposes—which are dispositive of BTB's attempt to, first, create the fiction that the lower court in reality issued a prejudgment writ of attachment; only to criticize what is a fiction of BTB's own creation. BTB's abstract discussion of the limitations on certain forms of prejudgment relief simply has no relevance to these *equitable* proceedings to preserve assets specifically identified to satisfy preexisting and lawful judgments against Mr. Sargeant, and which by law apply with equal force to his alter ego, BTB. The $21,828,446.65 enjoined by the lower court *are* the assets that are the subject of the underlying litigation, *cf.* Brief of Appellant, pp. 12, 14, 21, because Mr. Al-Saleh initiated his equitable claims against BTB and Mr. Sargeant

9

in the proceedings below (and the lower court issued injunctive relief to prevent) fraudulent dissipation of *those* assets. *See, e.g.* (C.R. at 40) ("A sales transaction is scheduled to close on or about June 5, 2015 at which time Defendant BTB, and ultimately Defendant Sargeant as Defendant BTB is merely his alter ego, would ultimately receive approximately $52 million. . . . Plaintiff immediately seeks a Temporary Restraining Order enjoining Defendants from disposing of, directing or transferring away, or in any way removing the availability of funds sufficient to satisfy Plaintiff's judgments . . . .").[5]

> 2. *The Texas Uniform Fraudulent Transfers Act in any event authorizes even "prejudgment" injunctive relief*

Even assuming *arguendo* Mr. Al-Saleh's attempt to prevent BTB's fraudulent transfer somehow could be cleaved from equitable principles that countenance relief against a judgment debtor and its alter ego; BTB still has not articulated a legal defect with the relief granted by the lower court. BTB in fact plainly ignores the *statutory* authorization for precisely such relief codified in the Uniform Fraudulent Transfers Act.

Three distinct remedial provisions embrace the relief. Texas Business and Commerce Code section 24.008(a)(2) provides: "In an action for relief against a

---

[5] The $21,828,446.65 enjoined by the lower court before the money could be dispersed, corresponds with a portion of the $52 million referenced above. In the proceedings below, BTB opposes Mr. Al-Saleh's discovery efforts regarding the present whereabouts of the balance of the $52 million.

transfer or obligation under this chapter, a creditor, subject to [defenses BTB has not proved here], may obtain . . . an attachment or other *provisional* remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings . . . ." (emphasis added).

Texas Business and Commerce Code section 24.008(a)(3)(A) independently provides: "In an action for relief against a transfer or obligation under this chapter, a creditor, subject to [defenses BTB has not proved here], may obtain . . . subject to applicable principles of equity and in accordance with applicable rules of civil procedure . . . an *injunction* against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property . . . ." (emphasis added). Section 24.008(a)(3)(B) then provides an expansive catchall provision, allowing a court to enter "any *other* relief the circumstances may require." (emphasis added).

BTB fails even to mention any one of these three mechanisms by which a court is authorized to issue preliminary equitable relief in a dispute under the Uniform Fraudulent Transfers Act. But this is precisely the context in which the United States Supreme Court (cited by BTB on pages 7, 10 – 11, and 15 – 16 of its Brief of Appellant for analogs to state law) deemed equitable relief appropriate pending a final ruling:

the *Act* as a whole indicates an intention to establish a *statutory* right which the litigant may enforce in designated courts by such legal or *equitable* actions or procedures as would normally be available to him. Undoubtedly any suit to establish the civil liability imposed by the Act must ultimately seek recovery of the consideration paid . . . . But [the statute] states the legal consequences of conduct proscribed by the Act; it does not purport to state the form of action or *procedure* the claimant is to employ.

Moreover, in [the statute], specified courts are given jurisdiction 'of all suits in *equity* and actions at law brought to enforce any liability or duty created by this subchapter'. The power to enforce implies the power to make effective the right of recovery afforded by the Act. And the power to make the right of recovery effective implies the power to utilize *any of the procedures* or actions normally available to the litigant according to the exigencies of the particular case.

*Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287 – 88 (1940) (emphasis added).[6]

Texas courts, in turn, have approved temporary injunctions specifically entered to prevent "prejudgment" transfer of assets in violation of the Uniform Fraudulent Transfers Act. In *Metra United Escalante, L.P. v. Lynd Co.*, for

---

[6] The Supreme Court's subsequent ruling in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999) likewise does not have the import BTB ascribes. While the Court held: "one without a judgment[] ha[s] no cognizable interest" in equitable relief, *id.* at 319 – 20; the Court in no way countermanded the well-accepted principle that one *with* a judgment, may enforce the judgment, and preserve assets from fraudulent disposition through equity. The Court moreover reaffirmed a statute may authorize prejudgment relief, even if that relief otherwise would not have been recognized in equity: "it involved *not* the Court's general equitable powers. . ., but its powers under the statute . . . ." 527 U.S. at 326 (emphasis added).

instance, a court of appeals upheld the justifications for a temporary injunction based on the following fact findings by the lower court:

> this Court finds that [defendant's] *prior* transfer of assets from the sale . . ., *beyond the jurisdictional reach* of [this] Court, and to its insiders and investors, along with [defendant's] admission that it intends to continue to make *further transfers*, mandate extraordinary relief including the entry of this *Temporary Injunction*. Absent the entry of this Temporary Injunction Order, [defendant's] propensity for improperly [sic] transfer of assets in violation of the *Texas Fraudulent Transfers Act*, will most likely deprive Plaintiff of the ability to recover its losses and satisfy a judgment.

158 S.W.3d 535, 541 (Tex. App.—San Antonio 2004, no pet.) (emphasis added).

The rationales for the lower court's temporary injunction in *Metra United* were materially identical to the rationales offered by the lower court here: "property and assets will be moved, wasted, dissipated or otherwise transferred *beyond the jurisdictional reach* of this or any other United States Court if not *immediately* restrained based upon, among other things, testimony that a significant amount of . . . proceeds have *already* been transferred by BTB." (C.R. at 338) (emphasis added).

In the redundant mandamus proceeding BTB filed in this Court to challenge the lower court's injunctive relief (Case No. 13-15-00395-CV), BTB suggested the statutory remedies authorized in the Uniform Fraudulent Transfers Act, and applied in *Metra United*, could not apply here—because the remedies supposedly

13

can be imposed against only an attempt by a debtor, as the "transferor," to fraudulently dissipate assets. *See* 9/16/15 Reply, pp. 7 – 8; Case No. 13-15-00395-CV. The first flaw with this reasoning is the lower court premised injunctive relief on an express finding BTB *is* the "debtor," and "transferor," because BTB *is* Mr. Sargeant by virtue of alter ego principles. It simply is specious for BTB to suggest a preliminary finding in this regard is insufficient for injunctive relief, which by definition is preliminary in nature—because a final merits ruling that will be conclusively "binding" on BTB has not yet been entered. *Cf.* 9/16/15 Reply, pp. 1 – 2, 3 – 4; Case No. 13-15-00395-CV. In this regard, BTB is not complaining of any specific feature of the relief granted in this case; it is mounting a wholesale attack on the writ of injunction as an equitable tool to obtain provisional relief.[7]

---

[7] BTB's standard operating procedure in this appeal, and the parallel mandamus action, has been to identify various procedures under Texas law that may be employed to satisfy a judgment or preserve assets, then offer entirely academic analyses regarding why *those* procedures purportedly would not be appropriate bases for preliminary relief on the present record. The failing, of course, is the lower court did not issue relief, or purport to issue relief based on any of the distinct procedural tools to which BTB exclusively directs its focus. As appropriate, Mr. Al-Saleh requested, and the lower court granted relief based on remedies authorized by equitable principles, as well as the Uniform Fraudulent Transfers Act, to prevent fraudulent disposition of assets under the facts considered by the lower court.

It consequentially is unhelpful for BTB to cite cases such as *United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281 (Tex. App.—Houston [1st Dist.] 1983, no writ), wherein the court analyzed whether the Texas "turnover" statute (not a basis for the relief granted by the lower court and therefore not ripe for appellate review) could by asserted against an alter ego entity in advance of a formal fact finding on alter ego. *Cf.* 9/16/15 Reply, p. 2; Case No. 13-15-00395-CV. Even assuming *arguendo* the Texas turnover statute is an appropriate analog for the injunctive relief at issue here (which it is not—because the remedial mechanisms operate in distinct fashions), the fundamental distinction here is the lower court *has* made the requisite factual findings to justify the injunctive relief entered against BTB.

But the more fundamental flaw with BTB's contention is there simply is no such limitation in the Uniform Fraudulent Transfers Act, nor have cases such as *Metra United* recognized any such limitation. Texas Business and Commerce Code section 24.008(a)(3)(B) is most illustrative in this regard, authorizing a court to enter "any *other* relief the circumstances may require." (emphasis added). Contrary to this plain language, BTB would read in an otherwise unarticulated qualification that "any other relief . . ." in truth means any other relief—as long as it does not operate to prevent consummation of a fraudulent scheme by a third party "transferor," conspiring with the debtor.

The phrase "any other relief" should be read to mean precisely that, as it otherwise would undermine the very purpose of a statutory scheme designed to prevent fraudulent conduct of the kind BTB and Mr. Sargeant have attempted to consummate, through collusion. Other remedial provisions in the Uniform Fraudulent Transfers Act reinforce this conclusion. For instance, section 24.008(a)(2) does not speak in terms of provisional relief issued against some narrow class of persons, but instead focuses on "an action for relief against a

---

There was no such factual finding on alter ego at issue in *United Bank Metro*, because the appellate court simply was not considering whether the plaintiff had attempted to make a showing of the kind, given that plaintiff was not seeking preliminary relief premised on the turnover statute. Indeed, the holding in *United Bank Metro* suggested turnover proceedings simply would not be appropriate to resolve factual disputes on such issues. *See* 670 S.W.2d at 283 – 84. By comparison, the very purpose of an equitable claim for injunctive relief is to resolve fact issues of the kind. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 65.011(2) (authorizing the "writ of injunction" as a standalone remedial mechanism).

*transfer* or *obligation* . . .." and contemplates the "remedy against the *asset transferred or other property* . . . ." (emphasis added).[8]

The statute consequentially is drafted to preempt an entirely foreseeable ruse by a debtor to deflect claims brought under the Uniform Fraudulent Transfers Act, by claiming assets subject to the claim "in truth" are owned, controlled, or subject to "transfer" by a third party. BTB misreads *Metra United* if it misperceives the case to suggest a contrary interpretation. *Cf.* 9/16/15 Reply, p. 8; Case No. 13-15-00395-CV.

In *Metra United*, the court did not enjoin only the putative judgment "debtor" as the party acting in the capacity of "transferor"—but a separate entity that held assets needed to satisfy a potential judgment, but which would have been transferred beyond the court's jurisdiction; save for injunctive relief. The actual "debtor," who had breached a property management agreement was "Metra United Escalante, LP." *See* 158 S.W.3d at 538.

Metra United Escalante, LP had sold an asset (an apartment complex), and the proceeds of that sale were deposited with a separate entity identified as "Metra United Holding LLC." *Id.* Metra United Holding LLC then transferred almost all of the proceeds from the sale to "investors," such that the proceeds could not be

---

[8] Only section 24.008(a)(3)(A) refers to a specific class of persons, and even then authorizes relief against the "debtor *or* a transferee . . . ." (emphasis added).

used to satisfy a potential breach of contract judgment against the actual debtor, Metra United Escalante, LP. *See* 158 S.W.3d at 538, 544.

The court in *Metra United* did not forgo injunctive relief forbidding further disposition of assets through this fraudulent scheme, simply because Metra United Holding LLC technically would not be a judgment debtor or potentially liable party. The court instead intervened to prohibit the collective efforts of the putative judgment debtor *and third parties* to circumvent relief authorized under the Uniform Fraudulent Transfers Act—and the court did so without even considering alter ego as a basis to hold the respective parties liable.

The Uniform Fraudulent Transfers Act therefore clearly creates the remedies Mr. Al-Saleh has invoked here, and in unequivocally so doing; BTB's sole objection could be the *facts* somehow do not warrant invocation of the remedies *on the current record*. But if—as the lower court found—BTB is Mr. Sargeant's alter ego, BTB has no legal grounds to object to the injunctive remedy precluding fraudulent disposition of assets rightfully subject to Mr. Al-Saleh's judgments.

BTB's only defense perhaps would be that, in fact, it is not Mr. Sargeant's alter ego; but the lesson of *Metra United* is not even that would warrant the conclusion the lower court overreached by interrupting a unified scheme by BTB and Mr. Sargeant to fraudulently transfer assets. And BTB's greater obstacle is it

simply has not preserved any arguments regarding the lower court's application of the record to conclude BTB indeed *is* the alter ego of Mr. Sargeant.

### 3. *BTB's references to attachment and garnishment authorities are misguided*

BTB has not cited a single, sound authority in its briefing wherein injunctive relief was deemed impermissible to prevent a judgment debtor and its alter ego from dissipating assets to avoid a *preexisting* judgment. It is not at all enlightening for BTB to cite and discuss cases addressing the factually inapposite scenario in which plaintiffs sought to seize defendants' assets *before* there had been any adjudication of any kind, and where there were no questions regarding alter ego liability for the judgment.

Whereas it may indeed be antithetical to public policy and equity to infringe upon a litigant's property rights before its liability has been adjudicated, *cf. Grupo Mexicano de Desarrollo S.A.,* 527 U.S. at 322; that principle does not, nor should it operate to benefit an alter ego entity that is fraudulently dissipating assets for purposes of avoiding a preexisting judgment—*especially when the nature of injunctive relief fundamentally leaves the assets in the possession of that entity*.[9]

---

[9] Here, the court did not take possession of the BTB's assets by, for instance, obligating BTB pay the assets into a court registry; has not forbid BTB in the interim from benefiting from the "value" of the money in the form of accrued interest; and has not forbid BTB from treating the money as an asset for accounting purposes. BTB indeed has not offered this Court any evidence or explanation regarding any legitimate business purpose that has been impeded by the lower court's directive to in effect leave the funds undisturbed in a Texas bank account with BTB as the account holder. The fundamental premise of BTB's appellate contentions instead appears to

BTB's discussion and articulation of legal principles limited to a hypothetical scenario in which prejudgment rights either implicate or foreclose the right to injunctive relief consequentially do not warrant rebuttal. Mr. Al-Saleh does note, however, even assuming *arguendo* the prejudgment principles were pertinent (which they are not), they would indeed by satisfied on this record.

Even BTB admits prejudgment seizure of assets *can* be appropriate in an action for equitable relief—and as examples, BTB cites "rescission, constructive trust, or restitution." Brief of Appellant, pp. 14 – 15. It is not at all clear why BTB thereafter ignores every claim Mr. Al-Saleh has asserted in this matter is equitable in nature.

Alter ego is an equitable doctrine. *See, e.g., Wilson v. Davis*, 305 S.W.3d 57, 69 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Disregard of the corporate fiction . . . is 'an equitable doctrine' . . . ."). The relief Mr. Al-Saleh seeks under the Texas Uniform Fraudulent Transfers Act likewise is equitable in nature, because "[s]etting aside a fraudulent transfer is an equitable remedy." *Jackson Law Office v. Chappell*, 37 S.W.3d 15, 26 (Tex. App.—Tyler 2000, no pet.). Indeed, in the heading, and repeatedly in the text of his "Verified Amended Petition, Third-Party Petition, Application for Temporary Restraining Order and

---

be that it simply would prefer to transfer the assets beyond the jurisdiction of the United States *before* a final judgment can be entered, conclusively establishing those assets rightfully belong to Mr. Al-Saleh.

*Injunctive* Relief and Request for Appointment of Receiver," (C.R. at 38) (emphasis added); Mr. Al-Saleh emphasized he was seeking "equitable" relief to enjoin Mr. Sargeant's use of BTB to fraudulently transfer assets. *See, e.g.,* TEX. CIV. PRAC. & REM CODE § 65.001 ("The principles governing courts of *equity* govern injunction proceedings if not in conflict with this chapter or other law.") (emphasis added). *See also* (C.R. at 50) ("Plaintiff has initiated these proceedings asking this Court to utilize its broad legal and *equitable* powers to subject property in the hands of . . . Defendants/Judgment Debtors, to judicial sale and satisfaction of the Judgments. At issue in this proceeding is Defendant Sargeant's membership interest in BTB *and Defendant BTB itself* . . . .") (emphasis added).

None of Mr. Al-Saleh's claims have been asserted in a procedural posture equivalent to those reflected in the cases cited at pages 16 – 17 of BTB's Brief of Appellant—and to the extent there is superficial similarity to *JSC Foreign Economics Ass'n Technostroyexport v. International Development and Trade Services, Inc.*, 295 F. Supp. 2d 366 (S.D. N.Y. 2003), that court *misinterpreted* Second Circuit authority (*Wm. Passalacqua Builders, Inc. v. Resnick Dev. South, Inc.*, 933 F.2d 131, 134 – 36 (2nd Cir. 1991)) evaluating whether an alter ego claim was more analogous to an action at law or in equity for purposes of analyzing a

constitutional right to jury trial, *not* whether a prejudgment injunction to preserve assets was permissible when alter ego was alleged.[10]

Mr. Al-Saleh did not assert equitable claims "incidental" to a more fundamental dispute "at law" regarding whether a defendant is liable. Mr. Al-Saleh already has the judgments on liability, and here is asserting equitable claims as the bases to penetrate a fraudulent scheme to satisfy the judgments. The equitable claims consequentially are not incidental; they are the central feature of this dispute.

BTB distorts the record by quoting without context the following language from a post-hearing brief Mr. Al-Saleh filed in the lower court: "at this stage of the proceedings . . ."; "a satisfaction of the Florida Judgment . . . is not sought but, rather, merely the preservation of the funds necessary for satisfaction . . . ." (C.R. at 32). This statement does not betray Mr. Al-Saleh was attempting to "seize funds to aid him in satisfying a *future* money judgment against BTB . . . ." Brief of Appellant, p. 6 (emphasis added). It was a matter-of-fact observation that until BTB's alter ego liability for the *pre*existing judgments, resolved as a preliminary matter for purposes of temporary injunctive relief, conclusively is resolved at trial—BTB should be enjoined from fraudulently transferring the assets Mr.

---

[10] It also is not clear the New York legal principles addressed in the cases directly parallel Texas principles controlling here—because alter ego *is* treated as an equitable remedy under Texas law. It is telling, however, that in a dispute unequivocally governed by Texas law—BTB has resorted to inapposite case authority from New York.

Sargeant intended to pass through BTB, en route to an offshore entity, to avoid those judgments.

Similarly, Mr. Al-Saleh does not seek "damages" against BTB in the sense of quantifiable injuries independently caused by BTB, and which require further litigation. *Cf.* Brief of Appellant, p. 13. Mr. Al-Saleh seeks to enforce through equitable doctrines, the damage award *already* issued by the Florida court, and domesticated in the lower court—plus the corresponding costs and interest that continue to accrue. *Cf. Martin*, 2014 WL 6871392 at **1, 4 – 7.

Accordingly, even if the Court were to accept BTB's fictionalized characterization of this matter, BTB still would not be entitled to relief. A temporary injunction is an appropriate remedy in equitable proceedings to prevent the unlawful disposition of assets that are the subject of the equitable proceedings. *Cf. Animale Group Inc. v. Sunny's Perfume, Inc.*, 256 Fed. Appx. 707, 709 (5th Cir. 2007) (distinguishing the holdings in *Grupo Mexicano* and *Deckert* and holding that "[b]ecause Defendants seek equitable relief, the district court was authorized to preserve the status quo by entering a limited asset freeze.").

**B.     Alter Ego is not Equivalent to an Attempt to Satisfy a Judgment "out of" an LLC Membership Interest**

*1.  Applicable legal principles*

When a judgment creditor seeks to collect *against* the membership interest a judgment debtor holds in a Limited Liability Company, Texas Business

Organizations Code section 101.112 controls. Under such circumstances, the permissible remedy is a charging order against the membership interest. *See* TEX. BUS. ORG. CODE § 101.112(d).

But these principles are inapposite when there is a legal or equitable basis by which the LLC is liable on the debt in *its own right*. For instance, notwithstanding the provisions of the Texas Business Organizations Code, alter ego principles apply to a LLC for purposes of veil piercing. *See, e.g., Shook v. Walden*, 368 S.W.3d 604, 621 (Tex. App.–Austin 2012, no pet.).

### 2. BTB is directly liable as an alter ego

Mr. Al-Saleh's standalone alter ego claim against BTB is not an attempt to satisfy the outstanding judgments *out of* Mr. Sargeant's membership interest in BTB. A charging order providing that remedy already is in place; but has not translated into satisfaction of the judgments—because Mr. Sargeant has employed a series of deceptive practices to avoid responsibility.[11]

Mr. Al-Saleh therefore seeks to remedy one such practice through discrete relief, authorized by Texas law, to have BTB recognized as Mr. Sargeant's alter

---

[11] BTB and Mr. Sargeant voluntarily assented to a Charging Order in the proceedings below. *See* (C.R. at 27 – 30). Mr. Al-Saleh now strongly suspects they did so only based on the belief Mr. Sargeant's propensity to shelter his "personal" assets in sham entities would make the Charging Order toothless, coupled with the seriously mistaken belief Mr. Al-Saleh then would be without alternative remedies. The equitable relief granted by the lower court demonstrates otherwise.

ego. *See Shook*, 368 S.W.3d at 621 (holding that rules regarding piercing the corporate veil apply with equal effect to an LLC).

It therefore is irrelevant whether a charging order would be the exclusive remedy *if* Mr. Al-Saleh were here seeking *only* to satisfy a judgment by virtue of an LLC membership interest. He is not. BTB's liability independently is premised on BTB and Mr. Sargeant's alter ego status.

## VII. PRAYER

WHEREFORE, Appellee Mohammad Anwar Farid Al-Saleh respectfully requests this Court affirm the lower court's temporary injunction, dismiss this interlocutory appeal, and grant Mr. Al-Saleh all other relief, at law or in equity, to which he may be entitled.

September 28, 2015                        Respectfully submitted,

s/ Nolan C. Knight

Nolan C. Knight
  TX 24027125
  E-mail: nknight@munsch.com
MUNSCH HARDT KOPF & HARR, P.C.
3800 LINCOLN PLAZA
500 NORTH AKARD
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Daniel D. Pipitone
  TX 16024600
  E-MAIL: dpipitone@munsch.com
Kenneth W. Bullock, II
  TX No. 24055227
  E-MAIL: kbullock@munsch.com
MUNSCH HARDT KOPF & HARR, P.C.
Pennzoil Place
700 Milam Street, Suite 2700
Houston, Texas  77002
Telephone:   (713) 222-1470
Facsimile:    (713) 222-1475

**COUNSEL FOR  APPELLEE MOHAMMAD ANWAR FARID AL-SALEH**

## VIII.  CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify this computer-generated document contains 6,254 words.

s/ Nolan C. Knight

## IX. CERTIFICATE OF SERVICE

As required by Texas Rules of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify I have served this document on all other counsel of record—who are listed below—on September 28, 2015, by submission through the electronic case filing system of the Court:

Ms. Deidre B. Ruckman
Mr. Stacy R. Obenhaus
GARDERE WYNNE SEWELL LLP
1601 Elm Street
Suite 3000
Dallas, Texas 75201

*Counsel for Appellant BTB Refining, LLC*

Mr. Mark T. Mitchell
GARDERE WYNNE SEWELL LLP
600 Congress Avenue
Suite 3000
Austin, Texas 78701

*Counsel for Appellant BTB Refining, LLC*

s/ Nolan C. Knight

6550096v.4 15734/1