COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PENNY JONES, | § | No. 08-20-00040-CV |
| Appellant, | § | Appeal from the |
| v. | § | 155th District Court |
| MAXINE COPPINGER, | § | of Fayette County, Texas |
| Appellee. | § | (TC# 2018V-180) |

## **O P I N I O N**

Appellant Penny Jones ("Jones") and her now-deceased ex-husband, J.T. Jones ("J.T.") were ordered to sell their primary residence pursuant to a divorce decree. They agreed to retain Appellee Maxine Coppinger ("Coppinger"), a licensed real estate agent, to serve as their listing agent. Although the property sold at a price agreed upon by the parties, Jones filed the present lawsuit against Coppinger, alleging that Coppinger failed to disclose certain information to her, which caused Jones to agree to a lower sales price than she otherwise would have. Jones's lawsuit alleged four causes of action against Coppinger, all of which were based on the claimed failure to disclose information: (1) fraud by nondisclosure; (2) breach of fiduciary duty; (3) breach of contract; and (4) violations of the Texas Deceptive Trade Practices Act ("DTPA").

The trial court granted Coppinger's motion for summary judgment, dismissing all four causes of action, and further granted Coppinger's request for an award of attorney's fees and costs pursuant to the parties' contract. Although we disagree with Jones's arguments that the trial court erred in granting the summary judgment or in awarding attorney's fees and costs, we agree with Jones that the trial court erred in holding her attorney individually responsible for paying the award, and for stating in its order that the failure to pay the award is enforceable by contempt proceedings. We therefore strike those provisions from the attorney's fee order, but affirm the trial court's judgment in all other respects.[1]

## I. FACTUAL BACKGROUND

### A. The Listing Agreement

Under the terms of their divorce decree, Jones and her then-husband, J.T. were required to liquidate various community assets, including their primary residence, located on a 169-acre tract of land in Fayette County (hereinafter the "property"). The decree required the parties to agree upon a realtor who was an active member of the Multiple Listing Service (MLS) to list the property at its fair market value no later than January 15, 2016. It further directed the parties to accept any offer on the property within 10% of the listing price. If the property was not sold within six months of the listing date, the parties were to work with the real estate agent to establish a scheduled reduction in the listing price. In addition, the decree directed the parties to use a portion of the proceeds from the sale to pay an existing IRS debt of $230,000, after which the parties were to split any remaining profit from the sale on an equal basis. It is undisputed that Jones was

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that Court to the extent required by TEX.R.APP.P. 41.3.

represented by two attorneys throughout the divorce proceedings, as well as during the ensuing real estate transaction.

The parties ultimately agreed upon Coppinger, an associate broker at Heritage Texas Country Properties (hereinafter "Heritage"), as the listing agent. Jones and J.T. thereafter signed a listing agreement with Heritage, which Coppinger signed in her capacity as the "broker's associate" and its "authorized agent," allowing her to list the property for $1.5 million. The agreement, which ran from March 9, 2016 to September 14, 2016, provided that Heritage was to receive a commission of 6%, to be split with the buyer's broker, if the property was sold during that time. The listing agreement also contained a clause, requiring the parties to mediate any dispute, and a provision stating that if the "seller or broker is a prevailing party" in any legal dispute brought as a result of the listing or any transaction contemplated by the listing, the prevailing party would be entitled to recover costs and reasonable attorney's fees from the non-prevailing party.

**B. The Sales Agreement**

Although the exact date is not clear, the parties received an offer of $1.2 million on the property on or before May 31, 2016. That same day, one of Jones's attorneys sent an email to Coppinger and J.T.'s attorney, Katrina Packard ("Packard"), stating that the offer was too low; he then suggested making a counter-offer of $1.235 million, with an agreement to convey 15% of the mineral interests on the property to the buyer, together with an agreement that Jones would be responsible for cleaning the property prior to the sale.[2] In suggesting this amount, Jones's attorney pointed out that the parties had agreed to reduce the listing price by 5% if the property did not sell within 90 days of the initial listing, which meant that the listing price would soon be reduced to $1.425 million if this sale was not completed. And in turn, he pointed out that because

_____

[2] The record reflects that the house located on the property was in a less than pristine condition, which impaired the marketing and selling of the property.

3

the divorce decree required the parties to accept any offer that was within 10% of the listing price, this meant that they would soon be required to accept an offer of $1.2825 million. And although he noted that the proposed counter-offer of $1.235 million was less than that amount, he nevertheless stated that his client was willing to accept that amount.

J.T. agreed with the proposed-counter offer which was communicated to the buyer. The parties thereafter signed a sales agreement on June 3, 2016, which incorporated the terms of the counteroffer and set a closing date for June 24, 2016.

### C. The Disclosure of the 1031 Sales Exchange Information

Sometime prior to June 15, 2016, Coppinger contacted the buyer's agent and the title company to inquire if the closing date could be extended because Jones was having problems cleaning the property, as required by the sales agreement. In response, the buyer's agent sent Coppinger an e-mail on June 15, 2016 at 8:45 a.m., stating that the buyer needed to close on June 24, 2016, as set forth in the sales contract, in order to be "in compliance with his 1031 exchange."[3]

---

[3] The IRS website provides the following information regarding a 1031 exchange:

> Whenever you sell business or investment property and you have a gain, you generally have to pay tax on the gain at the time of sale. IRC Section 1031 provides an exception and allows you to postpone paying tax on the gain if you reinvest the proceeds in similar property as part of a qualifying like-kind exchange.
> [. . .]
> To accomplish a Section 1031 exchange, there must be an exchange of properties. The simplest type of Section 1031 exchange is a simultaneous swap of one property for another.
> [. . .]
> Deferred exchanges are more complex but allow flexibility. They allow you to dispose of property and subsequently acquire one or more other like-kind replacement properties.

https://www.irs.gov/pub/irs-news/fs-08-18.pdf.

There are two limits to a deferred like-kind exchange:

> The first limit is that you have 45 days from the date you sell the relinquished property to identify potential replacement properties.
> [. . .]

4

Coppinger then sent an email to the attorneys for both parties at 11:55 a.m. that same day, explaining that the closing was "chiseled in granite," as the buyer was executing a 1031 exchange. Jones admitted at her deposition that neither she nor her attorneys objected to the sale going forward at that time, and the closing therefore took place as scheduled on June 24, 2016, which Jones attended with one of her attorneys.

## II. PROCEDURAL BACKGROUND

### A. Jones's Original Petition

Almost two years later, Jones filed her Original Petition naming Coppinger as a defendant, alleging the following four causes of action: (1) fraud by nondisclosure; (2) breach of fiduciary duty; (3) breach of contract; and (4) violations of the Texas Deceptive Trade Practices Act ("the DTPA"). These claims were all based on the factual allegation that Coppinger knew that the buyer was using a 1031 exchange prior to June 13, 2016, and that she had a fiduciary duty and a contractual obligation to timely disclose this information during the negotiations period, but failed to do so. Jones alleged that knowing this information would have enabled her to negotiate a higher sales price, as the buyer's use of the 1031 exchange placed him at a financial "disadvantage" due to his need to close the sale within a certain timeframe or risk losing the tax advantages, making it unlikely that he would have "turn[ed] down" a higher counter-offer than the parties made. In effect, she believes that she could have pressured the buyer into paying the full fair market value of the property, which she alleged was $1.5 million, and that she therefore suffered actual damages of $132,500 (her one-half share of theorized increase in the net proceeds from the

---

The second limit is that the replacement property must be received and the exchange completed no later than 180 days after the sale of the exchanged property or the due date (with extensions) of the income tax return for the tax year in which the relinquished property was sold, whichever is earlier.

https://www.irs.gov/pub/irs-news/fs-08-18.pdf.

5

sale). In addition to seeking compensation for her actual damages, she requested mental anguish damages, as well as exemplary damages pursuant to sections 41.003 and 41.008 of the Texas Civil Practices & Remedies Code.

Coppinger filed an answer denying Jones's allegations, and asserted a counterclaim alleging that Jones had breached the parties' listing agreement by not seeking mediation of the parties' dispute, as required by the contract. Coppinger alleged that this breach entitled her to attorney's fees.

## B. Coppinger's Motion for Summary Judgment

After a period for discovery, Coppinger filed a no-evidence and alternative traditional motion for summary judgment. In her motion, Coppinger alleged that she timely disclosed the information regarding the buyer's use of the 1031 exchange on the same day that information was e-mailed to her (June 15, 2016). The motion attached the e-mail exchange and included Coppinger's affidavit testifying that she did not know the information prior to that date. The motion argued her timely disclosure of this information negated the fraud by nondisclosure, breach of fiduciary duty, and breach of contract claims. Additionally, and with respect to the claim for fraud by nondisclosure claim, Coppinger added that Jones could not prove any injury that she suffered by the alleged failure to disclose the information. Rather, her claim that she would have been in a better negotiating posture if she had known of the information was based on mere speculation. Coppinger, however, did not challenge the damages element of any of Jones's remaining claims.

And with respect to Jones's DTPA claim, Coppinger alleged that real estate professionals were exempt from the DTPA except in circumstances in which the professional made an "express misrepresentation," and that Jones's DTPA claim should be dismissed, as Jones had not alleged

6

that she had made any such misrepresentation. Coppinger retained her own right to seek attorney's fees as the prevailing party on the contract and stated her intent to later prove up the amount of those attorney's fees and costs.

### C. Jones's First Amended Petition and Her Response to the Motion

In her response to the motion for summary judgment, Jones did not come forward with any evidence to rebut Coppinger's claim that she only learned of the 1031 information on June 15, and that she disclosed it the same day. Nor did she present any additional evidence to establish her claim for damages. Instead, she attached to her motion a copy of a First Amended Petition, filed only minutes before, in which she made new factual allegations, contending that Coppinger had engaged in "improper, unilateral conversations" with J.T. and Packard prior to the signing of the sales agreement. She argued these unilateral conversations supported all four of her previously-pled causes of action.

Jones attached copies of these communications to her summary judgment response, all of which pertained to a potential IRS problem. On May 5, 2016, Coppinger sent to the attorneys for both parties an email inquiring about the possibility that the IRS might foreclose on the property to satisfy the tax debt the parties owed, and asking if that would affect any existing "mineral leases" on the property.[4] Although it is unclear whether Jones's attorneys also responded to the inquiry, Packard as J.T.'s attorney sent Coppinger an email on May 12, 2016, without copying Jones's attorney, stating that there were no mineral leases on the property at that time. However, Packard explained that if the IRS foreclosed on the property to satisfy the IRS debt, all mineral interests on the property would go to the IRS. She further informed Coppinger that the IRS was already levying on J.T.'s social security checks, but that the levy would not satisfy the IRS debt, and that

---

[4] The Listing Agreement contained a special provision, reflecting that there was a "mineral agreement" on the property that was part of the agreement.

7

the "property may be next." On May 13, 2016, Coppinger replied directly to Packard's email, without copying Jones's attorneys, thanking her for the response, and expressing concern that if the IRS foreclosed on the property, she would be "out of a job," and would lose the advertising expenses she had invested in the property. She then asked Packard how long she would have to sell the property in the event of a foreclosure. Packard responded that same day, telling Coppinger that she did not know the answer, but encouraged her to continue her efforts to market the property and to bring forward all offers that she received.

Jones alleged in both her First Amended Petition and in her response to Coppinger's motion for summary judgment that during these communications, Coppinger revealed that she had an "urgency" to sell the property so that she would not lose her "investment" in marketing the property or potentially lose her commission. Jones alleged that Coppinger had both a fiduciary duty and a contractual obligation to disclose these communications to her, given her obligation to treat both parties on an "equal" basis. She then posited the same theory of damages as she did with respect to Coppinger's failure to disclose the 1031 exchange information, arguing that the failure to disclose the communications placed her in a less favorable negotiating position, and resulted in her acceptance of a sales price below the "equitable value" of the property.

Jones summary judgment response also attached several discovery pleadings, excerpts of Coppinger's deposition, and an unsigned and unnotarized statement from one of her attorneys who represented her during the divorce proceedings and the real estate transaction. Jones herself did not file an affidavit, nor did she attach any additional excerpts from her deposition.[5]

---

[5] Coppinger filed a reply that pointed out that both Jones and J.T. were fully aware of the IRS debt and the possibility of a potential IRS foreclosure and the consequent need to sell the property as soon as possible.

### D. The Trial Court's Judgment and the Appeal

The trial court granted Coppinger's motion, expressing concern at the hearing that Jones had not come forward with any evidence to establish that she had suffered any injury due to Coppinger's actions. The trial court thereafter entered orders in Coppinger's favor resolving her counterclaim for attorney's fees. The trial court found that Coppinger was entitled to an award of reasonable attorney's fees and costs pursuant to the parties' listing agreement, as she was the "prevailing party" in the litigation. After Coppinger's attorney provided evidence of the amount of the fees and costs incurred in the litigation, the trial court issued a separate order awarding Coppinger attorney's fees in the amount of $22,565 and costs of $3,727.36, and further stated in its order that both Jones and her attorney were responsible for paying the award, under threat of contempt.

Jones thereafter filed a motion for new trial, challenging both the trial court's order granting summary judgment, as well as its award of attorney's fees. The trial court denied Jones' motion for new trial, and this appeal followed. Jones's raises two issues on appeal, the first generally stating that the trial court erred in granting Coppinger's motion for summary judgment. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (issue stating that "the trial court erred in granting the motion for summary judgment" allows argument as to all possible grounds upon which the summary judgment should have been denied). Under that issue, she makes several procedural challenges to Coppinger's motion, in addition to arguing that material questions of fact remain for a jury to determine with respect to all elements of her four causes of action. Appellant's second issue on appeal complains of the trial court granting Coppinger's request for an award of attorney's fees and costs.

## III. THE SUMMARY JUDGMENT

### A. Standard of Review

We review a trial court's order granting summary judgment de novo, taking "as true all evidence favorable to the nonmovant," and "indulg[ing] every reasonable inference and resolv[ing] any doubts in the nonmovant's favor." *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017) *quoting Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Further, when a motion asserts both no-evidence and traditional grounds, we first review the no-evidence grounds. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (holding that when party moves for summary judgment on both traditional and no-evidence grounds, appellate courts first address no-evidence grounds).

A no-evidence motion for summary judgment is similar to a pre-trial motion for directed verdict. *See Draughon v. Johnson*, No. 20-0158, 2021 WL 2387430, at *3 (Tex. June 11, 2021), *citing* TEX.R.CIV.P. 166a(i). The motion must state the elements as to which the movant believes there is no evidence. TEX.R.CIV.P. 166a(i). "A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). "[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists "when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *King Ranch*, 118 S.W.3d. at 751 (internal quotation marks omitted).

## B. Application

Two common issues pervade each of Jones's four causes of action. The first is her liability allegation that initially claimed Coppinger failed to timely disclose the 1031 exchange. When Coppinger challenged that allegation (and presented her own affidavit denying it), Jones alleged a new and different non-disclosure theory related to discussions of an IRS lien. Jones now contends this additional theory negates the summary judgment which was premised only on an attack on the 1031 exchange theory. We ultimately need not address the liability claim, because regardless of what was allegedly not disclosed, the non-disclosures all lead back to the second common issue: Jones's theory of damages.

### 1. The common element of damages

Under each of the alleged claims, some damages must generally result from the complained of conduct. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219-20 (Tex. 2019) (fraud by non-disclosure); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (breach of fiduciary duty); *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (breach of contract). The DTPA itself imposes a requirement that a defendant's actions were the "producing cause of his economic damages[.]" TEX. BUS. & COM. CODE ANN. § 17.50(a).

As the trial court recognized, all four of Jones's causes of action, as pled, contained a common theory of damages. In her First Amended Petition, Jones alleged that she could have negotiated a better price for the property (or offered a smaller share of the mineral rights) if Coppinger had not failed to disclose the 1031 exchange or IRS lien information during the negotiations period. This same question of damages is common to the claims for fraudulent non-disclosure, breach of fiduciary duty, and breach of contract. It is also common to Jones's DTPA

11

economic damage claim.[6] Jones, however, presented no evidence that any of the allegedly non-disclosed information would have raised the purchase price.

First, Jones argues that if she had known of the 1031 exchange, she could have negotiated with the buyer to pressure him into paying the "equitable value" of the property, which she equates with the listing price of $1.5 million. However, Jones presented no summary judgment evidence to establish that the fair market value of the house was $1.5 million, or that it was in fact any higher than the price agreed upon in the sale contract. Instead, when asked at her deposition why she believed the house had a fair market value of $1.5 million, her only response was that the property was "pretty."

More importantly, there is no evidence in the record to support Jones's allegation that the buyer would have been willing to pay $1.5 million for the property (or take a smaller mineral interest), or that, in fact, he would have paid any more than the agreed-upon amount in the sales contract simply because he was utilizing a 1031 exchange. And faced with a higher counter-offer, the eventual buyer had three options: (1) accept the higher counter-offer; (2) make his own counter-counter-offer; or (3) walk away from the deal. Based on this record, we can only speculate which option he would have pursued. Yet, a party may not recover damages that are "too remote, too uncertain, or purely conjectural." *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 655 (Tex. 2016); *see also Pacheco v. Rodriguez*, 600 S.W.3d 401, 411 (Tex.App.--El Paso 2020, no pet.) (same). When a plaintiff's claim for damages is based solely on speculation or conjecture, summary judgment is appropriate. *See Swank v. Cunningham*, 258 S.W.3d 647, 667, 674 (Tex.App.--Eastland 2008, pet. denied) (affirming trial court's granting of

---

[6] Jones's First Amended Petition sought only economic damages under her DTPA claim. She omitted the claim for mental anguish that was in her original petition.

12

summary judgment where the plaintiff's "causation and damages theories were fatally speculative."); *Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 439 (Tex.App.--Houston [14th Dist.] 2005, pet. denied) (affirming trial court's order granting no-evidence summary judgment where the plaintiff's claim for damages was speculative and conjectural and plaintiff presented no evidence to create a genuine issue of material fact as to whether they suffered any injuries).

In addition, we find that Jones's claim that she was damaged by the undisclosed email communications that Coppinger had with Packard about the IRS suffers from the same defect. Jones complains that the email exchange reflected that Coppinger was concerned that the IRS might foreclose on the property, which created an "urgency" on her part to make a "quick" sale of the property, so that she would not lose her commission. But her theory of how she was damaged by the failure to disclosure that information is virtually identical to the alleged failure to disclose the 1031 exchange information. That is, she claims she could have negotiated a better sales price if she had known of the email exchanges. In addition to not presenting evidence that the buyer would have paid a higher sales price if negotiations had continued, she provides no explanation for how this information would affect the sales price of the property, or how it could have had any impact on the parties' negotiations.

As Coppinger points out, the subject matter discussed in the email exchange had nothing to do with the parties' negotiations and was instead a discussion of a concern about which all parties to the listing agreement were aware even before negotiations began. In particular, the undisputed summary judgment evidence established that Jones was clearly aware of the IRS debt and the consequent possibility that the IRS might foreclose on the property. She testified at deposition that she was already aware of the "serious threat" posed by the possibility of the IRS

13

foreclosure, and the consequent need to act quickly to sell the property. And, as Coppinger points out, both Jones and J.T. had a "common interest" in ensuring that the property sold before this occurred. Accordingly, Coppinger's desire to sell the property before a foreclosure occurred was not adverse to Jones's interest, and instead clearly aligned with her interests.

In addition, both parties were aware that Coppinger was obligated under the express terms of the listing agreement to expend funds to market the property, and that she was entitled to receive a commission for any sale that she procured. Accordingly, as Coppinger points out, Jones could have hardly been surprised to learn that Coppinger was eager to protect her investment by ensuring that the property sold before a foreclosure could take place. And finally, Jones has not alleged, must less presented any evidence to support, a finding that Coppinger's motivation to sell the property caused Jones to agree to a price that was lower than the fair market value of the property, as it was her own attorney who suggested the price, presumably with full knowledge of the property's value.

We therefore conclude that Jones failed to come forward with sufficient summary judgment evidence to raise a question of fact on the damage element of any of her causes of action.

**C. Jones's Procedural Challenges**

Jones, however, raises three responsive arguments she claims precludes the damages question negating all of her causes of action.

*1. Coppinger's failure to challenge the damages element of all causes of action*

An overarching theme in Jones's appeal centers on the fact that Coppinger's motion for summary judgment only challenged the damages element of her cause of action for fraud by nondisclosure, and that Coppinger failed to challenge the damages element of her remaining three causes of action. Jones therefore contends that the trial court erred by, in effect, granting summary

14

judgment "sua sponte" on elements of her remaining three causes of action that Coppinger did not challenge. Although we agree with Jones that Coppinger failed to expressly challenge the damages element of those three causes of action, we do not find this to be fatal to the summary judgment.

In general, a trial court is prohibited from granting a defendant's no-evidence summary judgment on an element of a plaintiff's claim not challenged in the motion. *See, e.g.*, *McConnell v. Southside Indep. Sch. Dist*, 858 S.W.2d 337, 341 (Tex. 1993) (a motion for summary judgment "must stand or fall on the grounds expressly presented in the motion."). However, a limited exception to this general rule applies when a plaintiff has brought multiple causes of action against a defendant, which all have a common element or require proof of the same "ultimate fact," and when the defendant has challenged that element or ultimate fact in its motion with respect to one claim, but omits the challenge with respect to the other claims. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). In that instance, if the moving party prevails with respect to the common element or ultimate fact on the challenged cause of action, the "unaddressed causes of action are derivative of the addressed cause of action, the summary judgment may be affirmed" with respect to all of the causes of action. *Id*., *citing* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 3.06[3] at 3-20 (3d ed. 2010) (collecting cases). This exception applies when the movant has conclusively proved or disproved a matter, such as an element of a claim, which would also preclude the unaddressed claim as a matter of law; it also applies "when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim." *Id*., *quoting Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex.App.--Houston [1st Dist.] 2009, no pet.). For the exception to apply, however, there must be "a very tight fit between what was proved or

15

disproved in the motion and what elements the unaddressed claim, as it was alleged, required: otherwise, the exception could swallow the rule." *Id.*, *quoting Wilson*, 305 S.W.3d at 73; *see also PAS, Inc. v. Engel*, 350 S.W.3d 602, 609-10 (Tex.App.--Houston [14th Dist.] 2011, no pet.) (recognizing that the application of this exception requires "'a very tight fit' between what was proved or disproved in the motion and what elements must be proved or disproved for the unaddressed claim[s].").[7]

This exception fits the present case. As explained above, all of Jones's causes of action depend on the failure to disclose the information leading to a lower sales price for the property. And since Coppinger expressly challenged the damages element of her claim for fraud by nondisclosure, and Jones in turn, failed to present any evidence to support that element, this conclusively established that she suffered no damages as the result of Coppinger's failure to disclose the 1031 information or the email exchange with Packard. Therefore, if she could not establish damages for the challenged cause of action, she could not do so for her remaining causes of action, as pled, which rely on the same theory of recovery. Accordingly, we conclude that even if the trial court erred in granting summary judgment on this unchallenged element of Jones's remaining claims, we must still affirm the summary judgment under this exception. *See Magee*, 347 S.W.3d at 297.

---

[7] In effect, this exception is an application of the broader "harmless error" rule set forth in Rule 44.1(a) of the Texas Rules of Appellate Procedure, which appellate courts must always apply before reversing a trial court's judgment because of an error of law. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297-98 (Tex. 2011) (per curiam), *citing* TEX.R.APP.P. 44.1(a) (a reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]." That is, even if a trial court erred in granting summary judgment on a cause of action or ground not expressly presented in the defendant's motion for summary judgment, the error is harmless "when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *Id.* at 298; *see also Driskell v. Concrete Raising Corp.*, No. 14-19-00117-CV, 2021 WL 1184400, at *10 (Tex.App.--Houston [14th Dist.] Mar. 30, 2021, no pet.) (mem. op.) (recognizing that when a motion for summary judgment omits a ground with respect to one of the plaintiff's causes of action, but the "omitted ground shares a common element or is derivative of a cause of action on which summary judgment was properly granted," then any error in granting summary judgment on the remaining causes of action is considered harmless).

### 2. *Jones's newly-alleged grounds for relief*

Jones also argues that the trial court erred in granting summary judgment with respect to the new grounds for relief that she raised in her First Amended Petition. Coppinger did not, and could not, expressly challenge those grounds in a motion for summary judgment directed at the Original Petition. Jones, however, did not add new a cause of action in her First Amended Petition. Rather, she added new facts regarding Coppinger's alleged breach of her duties that all still relied on a single theory of damages--that she could have negotiated a better price for the sale of the property--a theory for which she provided no support. Accordingly, we conclude that Coppinger's motion for summary judgment, which expressly challenged her theory of damages, was broad enough to include the newly-raised factual allegations in her First Amended Petition.

### 3. *Jones's failure to plead for a fee forfeiture*

And finally, Jones also argues that her breach of fiduciary duty claim does not require a showing of actual damages such as a difference in the sales price. And indeed, the Texas Supreme Court has explained that a breach of fiduciary duty claim does not necessarily require a showing that the plaintiff suffered any actual damages when the remedy sought is "equitable forfeiture of an improper benefit received by the agent," rather than damages for economic losses suffered by the plaintiff. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017) (breach of fiduciary duty claim could be based only on "disgorgement of all fees, financial benefits, profits, and any other remuneration derived" from the defendant's wrongful acts); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (1942) (fiduciary duty claim against agent who obtained a secret commission when plaintiff did not suffer any damages); *Burrow v. Arce*, 997 S.W.2d 229, 232, 239-40 (Tex. 1999) (affirming court of appeals finding that plaintiffs had a valid cause of action for breach of fiduciary duty for attorneys' alleged wrongful

17

conduct, in the absence of actual damages, where plaintiffs sought a forfeiture of all fees the attorneys received).

But the problem with this argument is that Jones did not request a fee forfeiture in any of her pleadings. Jones's First Amended Petition did not request divestiture of Coppinger's commission. To the contrary, she expressly stated that she was seeking actual economic damages and exemplary damages as the result of Coppinger's alleged breach. Nor did she request such relief in her general prayer for damages. Accordingly, her petition did not in fact indicate that she was seeking a disgorgement of Coppinger's commission.

Jones, however, contends that she brought this issue to the trial court's attention in her response to Coppinger's Motion for Summary Judgment by contending the commissions were part of her damage model for her breach of fiduciary duty claim. A closer look at her response, however, reveals that Jones only alleged that Coppinger "benefited" from her conduct by "securing the Property sale, recouping [her] 'investment,' and making a substantial commission on the Property sale." But again, she did not inform the trial court in her response that she was seeking to have Coppinger's commission disgorged as a result thereof. Nor did she request permission from the trial court to amend her petition to add that prayer for relief.

Jones came closer to raising this issue through her motion for new trial by citing general case law for the proposition that "other courts have found that even if the plaintiff sustains no loss from the defendant's breach of fiduciary duty, the defendant cannot retain the benefits it acquired from the breach," and that "these fact issues should be submitted to a jury." However, even if we were to conclude that this argument sufficiently informed the trial court that Jones was seeking a fee forfeiture, this argument came too late in the proceedings to avoid a waiver. As the Texas Supreme Court has recognized, when a party fails to bring an issue or argument to the trial court's

18

attention in a written response in opposition to a motion for summary judgment, the parties waive the right to raise the arguments or issues post-judgment. *See Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797-98 (Tex. 2008) (per curiam); TEX.R.CIV.P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

Accordingly, because Jones failed to raise the issue of a fee forfeiture as an alternative ground for relief at any time prior to the entry of summary judgment, she has not preserved this issue for appeal. *Id.*; *see also Paul v. Merrill Lynch Trust Co. of Texas*, 183 S.W.3d 805, 812, n.11 (Tex.App.--Waco 2005, no pet.) (where party only sought actual damages for a defendant's alleged breach of his fiduciary duties, he could not complain on appeal that the trial court erred by refusing to grant equitable relief, such as the imposition of a constructive trust on property).

Having found that Jones failed to come forward with sufficient summary judgment evidence to support any of her damages claim for the four causes of action, we conclude that the trial court properly granted summary judgment on all four causes.[8] Jones's Issue One is overruled.

## IV. ATTORNEY'S FEES

We next address Jones's argument that the trial court erred in awarding attorney's fees and costs to Jones.

### A. Background

As set forth above, Coppinger initially sought attorney's fees and costs in her counterclaim to Jones's Original Petition, arguing that Jones had breached the parties' listing agreement by not

---

[8] Because we conclude that Jones failed to meet her burden of coming forward with summary judgment evidence to sustain her claims for relief, we need not address her argument that she was entitled to pursue exemplary damages against Coppinger for her actions.

seeking mediation of the parties' dispute. However, in her motion for summary judgment, Coppinger stated that she was seeking attorney's fees and costs pursuant to the attorney fee provision in the parties' listing agreement, which provided that if the seller or broker is a "prevailing party" in any legal dispute arising from or related to the agreement, the prevailing party would be entitled to recover costs and reasonable attorney's fees from the "non-prevailing party." And after the trial court announced at the summary judgment hearing that it was granting summary judgment in Coppinger's favor, the parties agreed that the trial court could consider Coppinger's request for attorney's fees and costs by submission, without the need for a hearing.

Coppinger's attorney thereafter submitted a request for an award of attorney's fees and costs, arguing among other things that she was the "prevailing party" in the litigation and that she was therefore entitled to an award under the terms of the parties' listing agreement. Coppinger's attorney attached an affidavit, detailing the actions he took in the case, and averring that his attorney's fees totaled $22,565 and that he had incurred costs of $3,727.36.[9] Jones responded that the attorney's fees clause in the contract only applied to legal disputes between the "broker" and the seller, and that Coppinger was not the broker. Jones also objected to Coppinger's proposed order, which provided that both Jones and her attorney were responsible for paying the award, contending that there was no legal basis for making her attorney responsible. The trial court, however, disagreed with Jones, and issued an order awarding the full amount of attorney's fees and costs requested, expressly finding that the parties' listing agreement permitted such an award, and that both Jones and her attorney were responsible for paying the award. In addition, the trial

---

[9] Jones does not contest the reasonableness of the amount of the award, nor does she contend that Coppinger failed to provide sufficient documentation to support the amount requested. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019) (setting out standard of proof for fee shifting fee awards).

court included a warning in its order, stating that the failure to pay the award of attorney's fees "may result in a finding of contempt of court."

## B.   Whether Coppinger Could be Considered a Prevailing Party Under the Contract

In her first challenge to the trial court's award, Jones argues that the trial court erred in finding that Coppinger was a prevailing party under the attorney fee provision in the listing agreement, arguing, as she did in the trial court, that the provision only applied to disputes between a "broker" and a seller, and that Heritage, and not Coppinger, was named as the broker in the listing agreement.   Coppinger, acknowledges that she is not a licensed broker, but points out that the parties' contract clearly stated that Coppinger was the broker's associate as well as its "authorized agent," and that she signed the listing agreement in that capacity.

Moreover, Coppinger had no authority to sign the agreement except in her capacity as the broker's agent.   The Occupations Code defines a broker, in part, as a person who in exchange for a commission sells real estate, or procures or assists in procuring a prospect to effect the sale or exchange of real estate, or a person who is employed by or for an owner of real estate to sell any portion of the real estate . . . .   TEX.OCC.CODE ANN. §§ 1101.002 (1)(A)(i)(viii); 1101.002(1)(B)(i).   The Code further provides that a person must be licensed by the State to serve as a broker for another person; however, the Code allows a licensed sales agent, such as Coppinger, to engage in real estate brokerage if the person is "sponsored by a licensed broker and is acting for that broker."   TEX.OCC.CODE ANN. § 1101.351(c); *see also* TEX.OCC.CODE ANN. § 1101.002 (7). ("Sales agent" means a person who is sponsored by a licensed broker for the purpose of performing an act described by subdivision (1)).   Accordingly, it is clear that Coppinger was acting on the broker's behalf in signing the listing agreement.

21

The listing agreement repeatedly refers to the duties and responsibilities that the "broker" has to the seller, as well as the broker's authority and the broker's right to receive compensation in the form of a commission. However, throughout the trial court proceedings, Jones treated Coppinger as the "broker" with regard to the parties' listing agreement, alleging that Jones breached both her express and implied duties under the contract. Jones therefore clearly believed that Coppinger could be considered the "broker" under the terms of the parties' agreement for purposes of having breached the agreement, and it is therefore contradictory for her to now claim that Coppinger is not a "broker" for purposes of the attorney fee provision in that same agreement.

Accordingly, we conclude that the trial court properly awarded reasonable attorney's fees and costs to Coppinger as the "prevailing party" under this contractual provision.

### C. Whether the Trial Court Properly Held Jones's Attorney Liable to Pay the Award

Jones next argues, as she did in the trial court, that the trial court had no legal basis for holding her attorney responsible for paying the award. And, as Jones points out, Coppinger did not address that issue in her brief, and she has not directed us to any legal authority to support holding Jones's attorney responsible for paying the award, nor are we aware of any.

The contractual provision under which the trial court issued the award governs the "prevailing party" and "non-prevailing party," but not those parties' *attorney's*. Moreover, we know of no other statute or rule that would authorize the trial court to impose this liability on Jones's attorney. In general, an attorney is not liable to an opposing party for actions taken in connection with representing a client. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Therefore, absent a statute or rule imposing liability on opposing counsel, a trial court does not have the authority to hold a party's attorney responsible for paying an award of attorney's fees and costs imposed against a client. *Id*.; *see also Envision Realty Group, LLC v. Chuan Chen*, No. 05-18-00613-CV, 2020 WL 1060698 (Tex.App.--Dallas Mar. 5, 2020, no pet)

22

(mem. op.) (recognizing that although Rule 91a.7 of the Texas Rules of Civil Procedure permits a trial court to award costs and attorney's fees to a "prevailing party," the rule does not authorize the imposition of such an award against the opposing party's attorney); *Robinson v. Garcia*, 398 S.W.3d 297, 301 (Tex.App.--Corpus Christi 2012, pet. denied) (where statute did not expressly state that attorney's fees could be awarded against a party's attorney, trial court had no authority to order party's attorney to pay the award).

There are of course specific rules that permit a trial court to impose an award of attorney's fees against a party, the party's attorney, or both as a sanction for misconduct in litigation. *See* TEX.R.CIV.P. 13 (signing of pleadings); TEX.R.CIV.P. 215 (failure to obey various discovery orders); TEX.CIV.PRAC.& REM.CODE ANN. § 10.004 (signing frivolous pleading or motion); *see also Cantey Hanger*, 467 S.W.3d at 482 (recognizing that various mechanisms are in place to discourage and remedy an attorney's wrongful conduct, "such as sanctions, contempt, and attorney disciplinary proceedings"). However, the trial court's award was not made pursuant to any of these sanction provisions.[10] Accordingly, we agree with Jones that there is no legal basis for the trial court's order holding her attorney liable for paying the award of attorney's fees and costs. We therefore conclude that this portion of the trial court's order is void and must be stricken from the order.

### D. Whether the Trial Court Properly Included a Contempt Warning in the Order

And finally, Jones argues that the trial court erred by including language in its order stating that a failure to pay the award "may result in a finding of contempt of Court," contending that the

---

[10] We also note that sanctions of this nature may not be imposed against a party or attorney until there is notice and a hearing. *See Robinson v. Garcia*, 398 S.W.3d 297, 301 (Tex.App.--Corpus Christi 2012, pet. denied), *citing* TEX.R.CIV.P. 13, 215.1(d), 215.2(b), 215.3; TEX.CIV.PRAC.& REM.CODE ANN. § 10.003 ("The court shall provide a party who is the subject of a motion for sanctions . . . notice of the allegations and a reasonable opportunity to respond."). In the present case, no notice was given and no hearing was held.

trial court had no legal grounds for including such a warning in its order. We agree with this argument as well.

Although a trial court may generally enforce its order through contempt proceedings, it is well-established that Texas law does not allow contempt proceedings to be used to collect attorney's fees. *See, e.g.*, *Wallace v. Briggs*, 348 S.W.2d 523, 525-26 (1961) (orig. proceeding) (holding that even when an award of attorney's fees is included as part of a final judgment, "there is no authority for the judge to summarily order them paid or attempt to enforce that order by contempt proceedings."); *Ex parte Roan*, 887 S.W.2d 462, 464 (Tex.App.--Dallas 1994, no writ) ("Our law does not allow collection of attorney's fees by contempt proceedings."); *In re Smith*, No. 04-02-00360-CV, 2003 WL 1191408, at *2-3 (Tex.App.--San Antonio Mar. 12, 2003, no pet.) (mem. op.) (recognizing that although attorney's fees "may be enforced by other legal processes, such as execution or attachment of property," but not by contempt). This is so because an award of attorney's fees is considered a debt, and under the Texas Constitution, no person may be imprisoned for a debt. [11] *See Tracy v. Tracy*, 219 S.W.3d 527, 531 (Tex.App.--Dallas 2007, no pet.), *citing* TEX.CONST. ART. I, § 18 ("[n]o person shall ever be imprisoned for debt."); *see also In re Bielefeld*, 143 S.W.3d 924, 928 (Tex.App.--Fort Worth 2004, no pet.) (same). We therefore hold that this portion of the trial court's order is void and strike it from the judgment.

Jones's Issue Two is sustained in part and overruled in part as set forth above.

## V. CONCLUSION

We affirm the trial court's order granting summary judgment dismissing all four of Jones's causes of action. We further affirm the trial court's order awarding reasonable attorney's fees and

---

[11] A limited exception to this rule exists in some family law proceedings. *See Tucker v. Thomas*, 419 S.W.3d 292, 297 (Tex. 2013) (when the trial court awards attorney's fees in a suit involving child support enforcement, it may order such fees as additional child support which may be enforced by contempt.

costs to Coppinger, but strike the provision in the order holding Jones's attorney liable for paying the award, as well as the contempt language contained therein.

JEFF ALLEY, Justice

August 31, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.